BEER, Judge.
Raymond Ugulano filed this suit against his uninsured motorist insurer, Allstate Insurance Company, alleging that he was injured in an accident on July 27, 1974, as a result of the joint negligence of J. Dell Jackson (uninsured) and an unidentified uninsured motorist.
Allstate filed a motion for summary judgment and exceptions of res judicata and no right of action based upon the adverse judgment rendered in “J. Dell Jackson v. Allstate Insurance Company,” by the 24th Judicial District Court. In that proceeding, Jackson directly sued Ugulano’s liability insurer, Allstate (without joining Ugulano), alleging that Ugulano’s sole negligence was the cause of the accident of *319 July 27, 1974. After trial on the merits, judgment was rendered in favor of Jackson and against Allstate.
The same court has, in this suit, maintained Allstate’s exception of res judi-cata, holding that “the issue of negligence on the part of plaintiff, Raymond Ugulano, has been judicially determined and under said final determination, plaintiff could not recover under his uninsured motorist coverage in the instant case. . . ”
Ugulano appeals, contending that:
1) he was not a party to the first suit, and
2) The cause of action in the instant suit is based on the alleged joint negligence of Jackson and an unidentified driver, but, in the prior suit, the sole negligence of Ugulano was alleged to be the cause of the accident.
Ugulano was not a party in the Jackson suit against Allstate. However, his testimony in that proceeding is explicit:
“Q. (By Mr. Tortomasi, attorney for Jackson)
All right. Now, is it your contention that a yellow GTO was somehow involved in this accident?
A. (By Ugulano)
Yes.
Q. How was it involved?
A. He shot out from the service station. There was a cut in the lane there and I blew—
Q. Are you referring to this Amoco Service Station?
A. Yes, sir.
Q. Did you see this GTO as it left the service station and crossed the Westbound lanes of Airline Highway?
A. That’s what I was told, sir. All I seen is the yellow car there. I couldn’t say if it was a GTO or a BTO or whatever it was. All I seen it was a yellow and I blew at him and I put my brakes on to stop and that was the last I known of it. I woke up in the hospital. I thought I had hit him and I wind up—
Q. You thought you had hit the GTO?
A. That’s what I figured. I hit him.
Q. So, you didn’t see him cross the Westbound lanes?
A. He just pulled out and that was the end of it.
Q. Did you see him leave the station?
A. Yes. He shot right out. He shot right across the lanes.
Q. Now, did the GTO immediately turn East into Airline Highway or did he stop?
A. He just immediately turned right there and as I blowed at him he kept going and I just slammed my brakes and that was it.”
(Tr. 25-26.)
Approximately fifteen more pages of the transcript of the trial on the merits in Jackson v. Allstate cover Ugulano’s detailed testimony concerning the unidentified yellow GTO. It is, incidentally, in direct conflict with that of Emmett Kelly, III, a disinterested eyewitness to the accident, who, when questioned about the alleged third vehicle, responded:
“Q. (By Mr. Tortomasi):
Did you see anything at this time that would cause the Maverick to go into a spin?
A. Not really. I don’t know. It looked like the driver just lost control of the car. Of course, the highway was slick.
* * * * * *
Q. Did you see any car pull out of the opening in the neutral ground in front of the Maverick?
A. No, sir, I sure didn’t.”
(Tr. 9-10).
Thus, the issue of negligence of the driver of an unidentified third vehicle was fully explored during that trial, and, thereafter, considered by the trial judge, who, in his oral reasons for judgment, stated as follows:
“(The Court:) I’m satisfied, gentlemen, that the case presents one of liability and *320 I find that whatever caused the accident is attributable to the fact that the defendant did lose control of his vehicle, particularly, in view of the only independent witness that I heard. His basis for the defense of the presence of another car there doesn’t impugn Mr. Ugulano’s testimony, but, the evidence is not sufficient to support that defense. It’s that simple.”
We are, however, unable to agree that the res judicata requirements of Article 2286 have been met since Ugulano was not joined as a party in the first suit. Furthermore, the first suit was a tort claim based upon Ugulano’s alleged negligence, whereas this is a contractual claim by Ugulano allegedly arising from his insurance contract with Allstate. See, Sutterfield v. Fireman's Fund American Insurance Company, 344 So.2d 1159 (La.App. 4th Cir. 1977) (where insured’s claim under his collision insurance was distinguished as a separate issue from his distinct contractual claim under the uninsured motorist coverage provisions of the same policy).
Accordingly, we turn to a consideration of the applicability of the doctrine of judicial estoppel.
In Brown v. Globe Tool & Engineering Co., 337 So.2d 894, 898 (La.App. 4th Cir. 1976), we observed:
“The thrust of the California Co. [California Co. v. Price, 234 La. 338, 99 So.2d 743 (1957)] decision, considered with earlier and later decisions on the subject, is that when the triple identities are present, C.C. art. 2286 (contained in the section on presumptions of the chapter on proof of obligations) controls, but that when the triple identities are not present, a second action may still be barred by estoppel. Since the defense of estoppel by judgment, like the defense of fraud, is an equitable doctrine which cuts across positive law, its applicability must be decided on a case by case basis by an examination and analysis of the underlying facts and circumstances. No absolute or inflexible rules should be formulated as exceptions to the strictly defined codal provision for res judicata. Rather, estoppel by judgment should be applied when the court determines the demands of equity in a particular ease dictate that an already adjudicated issue should not be relitigat-ed and that the parties should be bound by a prior determination.”
Here, Ugulano has appeared as a witness and testified fully concerning an alleged third vehicle. That issue was squarely dealt with by the trial court. Ugulano complains that judicial estoppel will deprive him of the opportunity to be represented by counsel of his own choice with respect to his claim of liability on the part of his uninsured motorist insurer. This is factually correct, but its impact is much reduced by the fact that he fully aired all of his contentions of liability in the course of his extensive testimony during the previous litigation. The detail and extent of his testimony regarding the unidentified third driver, coupled with the clear judicial rejection of same, leads us to conclude that this issue need not be further considered. Judicial estoppel is a proper remedy and the action of the court in dismissing plaintiff’s suit is fully supportable, albeit on incorrect grounds.
Accordingly, the judgment dismissing plaintiff’s suit is affirmed.

AFFIRMED.