430 So.2d 1227 (1983)
Woodrow E. WILSON, et al.
v.
H.J. WILSON CO., INC., et al.
No. 82 CA 0629.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Rehearing Denied May 20, 1983.
*1228 Thomas E. Balhoff, Owen, Richardson, Taylor, Mathews & Akinson, Baton Rouge, for plaintiffs-appellants, Woodrow E. Wilson and Mary Catherine McLin Wilson.
*1229 Robert E. Barkley, Jr., Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for defendants-appellees, H.J. Wilson Co., Inc. and Huey J. Wilson.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is a suit to recover a certain number of shares of stock in H.J. Wilson Co., Inc. Plaintiffs, Woodrow E. Wilson and his wife, Mary Catherine McLin Wilson, appeal the judgment of the trial court in favor of the defendants, H.J. Wilson Co., Inc. and Huey J. Wilson.

FACTS
Huey J. Wilson (Wilson), the founder of and principal stockholder in H.J. Wilson Co., Inc. (Company), incorporated his first store in Baton Rouge, Louisiana in 1958. Wilson opened a second store, which was separately incorporated in 1961, in Jackson, Mississippi. In early 1965, a third store, also incorporated separately, was opened in Gulfport, Mississippi.[1] The Company operates a chain of catalog showrooms.
Woodrow E. Wilson (Woodrow), a minority shareholder in the Company is in the construction business with his own construction company, and is not now nor has he ever been actively engaged in the operation of the catalog showroom business.
The capital stock of the Baton Rouge store was owned by Wilson and his wife, Angelina (except for a few shares not involved in the present suit). Similarly, all of the stock of the Gulfport store was owned by Wilson and his wife. As for the Jackson store, Wilson held 600 of the 800 outstanding shares, with 100 shares each owned by Wilson's brothers, Woodrow and George, who had each contributed $10,000 to the Jackson store when it began operation.
In 1965, it was determined to reorganize the operation of the three stores under one corporation for purchasing, financing and accounting purposes. On July 1, 1965, a stock-for-stock agreement was executed by the former shareholders, whereby all shares of the three stores were acquired by a holding company known as Wilco, Inc., and in return the capital stock of Wilco, Inc. was issued to said shareholders. The reorganization was purportedly structured upon the respective book values of the three stores as shown in the financial statements at that time. Woodrow and George were each issued 202 shares of Wilco stock in exchange for their shares in the Jackson store. Alvin Wilson received one share, Angelina was issued 593 shares, and the remaining shares (3,058) were held by Huey J. Wilson.
On February 24, 1970, two new stock certificates were issued to Woodrow for 123 shares and 79 shares, respectively, said certificates totaling 202 shares. Woodrow did not turn in the Wilco certificate for 202 shares for cancellation. On that same date, Woodrow assigned the certificate for 79 shares to Wilson. He now claims this assignment of the certificate was fraudulently obtained by Wilson. The Company's records show a transfer of 35 shares from Woodrow to Wilson on February 15, 1971. This transfer is also questioned by Woodrow. Wilson's position is that the transfers of these two certificates to him was to adjust the stock distribution so as to more accurately reflect the relative values of the Baton Rouge and Jackson stores at the time of the reorganization.
On February 24, 1971, the three subsidiary companies were merged into a holding company, and the name of the corporation was changed to H.J. Wilson Co., Inc. At the same time, a reclassification of the Company's stock was approved, resulting in a 203 for 1 stock split to shareholders of record as of the close of business on February 15, 1971. The Company's books as of said date reflect Woodrow's ownership interest as being 88 shares instead of 202 shares, which Woodrow claims. Thereafter, on April 1, 1971, Woodrow was sent a stock certificate of the new corporation for the *1230 number of shares equivalent to the 88 shares. In June of 1971, the Company made a public offering of stock. During 1972, Wilson retransferred to Woodrow the 35 shares which had been transferred to Wilson on February 24,1970. Wilson refused to have any additional shares issued to Woodrow.
When it became apparent that an amicable settlement could not be reached, Woodrow filed the present suit on February 25, 1980, in state district court, and filed a companion suit based upon the federal securities laws, Section 10(b) 15 U.S.C. 78 j(b) and Rule 10b-5 thereunder, in federal court seeking recovery of the 79 shares or their value. At a status conference in the state suit in May, 1981, the trial judge decided to take no further action in the matter pending the decision in the federal case. By agreement of the parties, the federal suit was tried to the court alone only on the issue of prescription. On April 16,1982, the federal court, in written findings of fact and conclusions of law, applied a prescriptive period of two years to this claim under Section 10(b) of The Securities and Exchange Act of 1934. The federal district court further found that the plaintiffs were aware of enough facts which should have caused them to investigate further into the claim at least some time in 1972. Thus, since the action was not brought until 1980, the claim was held to have prescribed.[2] The federal district court found that The Securities and Exchange Act of 1934 contained no limitation period (prescription) that is applicable to claims under Section 10(b) and Rule 10b-5 promulgated pursuant thereto (17 C.F.R. § 240.105) and that federal law did not prescribe any general statute of limitation for civil actions. Consequently, the federal district court then examined the laws of the forum state (Louisiana) in an effort to find the statute most similar in purpose to Rule 10b-5.[3] The federal district court determined that there was a close analogy between Rule 10b-5 and the Blue Sky Law, La.R.S. 51:715 A(3) and E and held that the two year limitation period established by the Louisiana Blue Sky Law applied to this action as concerns the claim under Rule 10b-5. After maintaining the two year prescriptive period, the federal court dismissed the state claims without prejudice. See Wilson, et al v. H.J. Wilson, Co., Inc., No. 233,380 on the docket of the United States District Court for the Middle District of Louisiana, decided April 16, 1982, by Judge John V. Parker.
The federal district court also seriously considered acting upon the various allegations involving the laws of the State of Louisiana (and alleged violations thereof) asserted in the proceeding in federal court and determined that the plaintiff would not be prejudiced by its dismissal of all actions in federal court since the instant proceeding was pending in state court.[4]
*1231 Back in the state court, the plaintiffs filed an amended petition, and the defendants filed pleas and exceptions of res judicata, collateral estoppel, prescription, no cause of action, and no right of action. By consent of the parties, the federal court record, including all depositions and the transcript of the hearing on the issue of prescription of the federal claim, was introduced in evidence.

SPECIFICATIONS OF ERROR
1. The trial court erred in holding that it was bound by the "findings of fact" of the federal court in the proceeding in that court; and thus, in maintaining the exception of collateral estoppel.
2. The trial court erred in holding that the state claims were solely claims for fraud sounding in tort; and thus, in maintaining the exception of prescription of one year under La.C.C. art. 3536. Appellants also complain of the findings that the prescriptive period commenced running prior to March, 1976.
3. The trial court erred in holding that appellants did not have a right of action under La.R.S. 12:91; and thus, in maintaining the exception of no right of action on that basis.
4. The trial court erred in holding that appellants did not state a cause of action under La.R.S. 12:624; and thus, in maintaining the exception of no cause of action on that basis.

FINDINGS OF THE TRIAL COURT
The trial court first found that the doctrine of collateral estoppel was applicable *1232 and that under this doctrine the state court was bound by the findings of fact of the federal court. Next, the trial court found that the action was one in fraud which was barred by the lapse of one year, since Woodrow Wilson "had sufficient information" to put him on notice of the alleged wrongful acts against his interests during the period around 1972; yet he did not institute the present action until February 1980. The district court also found that the plaintiffs had no cause of action under the Louisiana Stock Transfer Law, La.R.S. 12:624, that section having been enacted for the benefit of third persons, not parties to the transaction, and that they had no right of action under La.R.S. 12:91, which section could be utilized only as a shareholder's derivative action. The court below did not rule on the exception of res judicata. Judgment was rendered in accordance with the court's findings.

ISSUES
In appealing, the plaintiffs argue that the trial court erred in sustaining the defendants' exceptions of collateral estoppel, prescription, no right of action and no cause of action. The first issue to be considered then is whether the doctrine of collateral estoppel is applicable so as to preclude the state court from a consideration of facts previously considered by the federal court. The next issue is whether a shareholder is barred from suing to recover shares of stock allegedly wrongfully or fraudulently transferred on the corporate books to the majority shareholder more than one year but less than ten years after the alleged transfer. In other words, what is the prescriptive period applicable under the circumstances of this case? Is the case governed by the one year prescription under La.C.C. art. 3536, or the ten year prescription under La.C.C. art. 3544? The final two issues concern La.R.S. 12:91 and 12:624: whether a minority shareholder has a right of action against a majority shareholder for breach of fiduciary duty other than by way of shareholder's derivative action; and whether a shareholder has stated a cause of action against a corporation which has allegedly transferred shares belonging to the shareholder without complying with the transfer provisions of the Louisiana Stock Transfer Law.

COLLATERAL ESTOPPEL
As we appreciate the decision of the federal court, the judge dismissed the federal matter on the basis of prescription of an action under § 10(b) of The Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10(b)(5), and pretermitted any decision on matters which properly belonged in state court. In this light, we must consider whether the court below (state court) erred in giving effect to the doctrine of collateral estoppel. We believe that it did. The Louisiana Supreme Court has stated clearly and emphatically that the doctrine of collateral estoppel is not to be employed in this state. Ugulano v. Allstate Ins. Co., 367 So.2d 6 (La.1978); Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La. 1978). In both of the cited cases, the Louisiana Supreme Court held that common law issue preclusion devices, such as collateral estoppel, have no application in this state.
The basis for excluding all such preclusion devices from our law was stated by Chief Justice Dixon, organ for the Welch court, as follows at pp. 156, 157:
"Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law. Developed in the common law, the device precludes the relitigation of issues actually decided in a prior suit between the parties on a different cause of action. See Mitchell v. Bertolla, [340 So.2d 287 (La.1976)], supra, and the authorities collected therein. Even among common law jurisdictions the doctrine is not applied uniformly since there are different theories on whether `mutuality' or an identity of parties is necessary. See Annot. 8 A.L.R.3d 1044 (1979).
"Because of a basic difference between the meanings ascribed to the common law from `cause of action' and the civil law `cause' in res judicata, the doctrine of *1233 collateral estoppel is not susceptible of an orderly application in a jurisdiction utilizing civil law terminology. Under the common law, res judicata applied where there is an identity of parties and causes of action in both suits. See 51 Tul.L.Rev. 611 (1977). Unlike the limited meaning given `cause' in our system, `cause of action' encompasses all grounds upon which the claim might have been based. Collateral estoppel, developed to supplement common law res judicata, is therefore necessarily defined in terms which have different meanings when used in Louisiana.
"The introduction of collateral estoppel into our system would effectuate a change fundamentally different from that established by ancient legislation. By choosing to define res judicata in narrow terms, the legislators apparently concluded that the inconvenience caused by relitigation is outweighed by the injustice of perpetuating erroneous judicial decisions. The adoption and application of an issue preclusion device which would broaden the operation of res judicata in Louisiana would subvert the original ideal established by codes.
"While this court had on occasion recognized collateral estoppel in our system of law, no clear understanding of the application of that doctrine has been developed in the cases or in legal literature. Therefore, we hold that none of the variations of the common law doctrines of res judicata apply in Louisiana."
The Welch decision was adhered to in Ugulano, where the court remarked at page 7:
"There would be no profit in a re-examination. There is an incompatibility in common law res judicata (aided by collateral estoppel) and civil law res judicata that would cause only confusion if the two doctrines were employed in the same jurisdiction. The incompatibility has been fully explored. Mitchell v. Bertolla, [340 So.2d 287 (La.1976)]; Welch v. Crown Zellerbach Corp., [359 So.2d 154 (La.1978)]; Hope v. Madison, 194 La. 337, 193 So. 666 (1940); 51 Tul.L.Rev. 611 (1977); 2 La.L.Rev. 347 (1940); 2 La.L. Rev. 491 (1940)." [footnote omitted]
The lower court's reliance upon the case of Shell Oil Company v. Texas Gas Transmission Corp., 176 So.2d 692 (La.App. 4th Cir.1964), is misplaced and clearly erroneous. In Shell Oil Company, supra, our brethren of the Fourth Circuit were relying on the doctrine of collateral estoppel as set forth in California Company v. Price, 234 La. 338, 99 So.2d 743 (La.1957). In Ugulano v. Allstate Ins. Co., supra, the Supreme Court expressly overruled California Company v. Price, supra and stated the following at pp. 6, 7:
"This writ was granted to examine a Court of Appeal holding that a suit was barred by `judicial estoppel.' Ugulano v. Allstate Insurance Co., 359 So.2d 318 (La. App.1978). In the same month the Court of Appeal decided this case, this court decided Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978); we held that none of the variations of the common law doctrines of res judicata, including collateral estoppel, applied in Louisiana. The Welch case referred to Mitchell v. Bertolla, 340 So.2d 287 (La.1976), where we examined in detail the `judicial estoppel' of California Co. v. Price, 234 La. 338, 99 So.2d 743 (1957), judicial confession and the common law doctrine of `collateral estoppel.' It was not necessary to decide, in Mitchell v. Bertolla, whether collateral estoppel would apply in Louisiana (in view of the doctrinal differences between the civil and the common law) because we found plaintiff's suit was not barred by either collateral estoppel or res judicata. Welch v. Crown Zellerbach Corp., supra, decided against using the `judicial estoppel' or collateral estoppel recognized in California Co. v. Price, supra; insofar as California Co. v. Price recognized collateral estoppel, it is overruled (as is Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (1954); Buillard v. Davis, 185 La. 255, 169 So. 78 (1936); Heroman v. Louisiana Institute of Deaf and Dumb, 34 La.Ann. 805 (1882)."
*1234 On this issue, therefore, we hold that the plaintiffs are not precluded from raising any of the issues properly before the state court in this action. The facts involved in the state action were not put to rest in the federal court. See Doyle v. State Farm (Mut.) Ins. Co., 414 So.2d 763 (La.1982).

PRESCRIPTION
Having determined that the issue of prescription of the state action was not decided by a final adjudication of the federal court, we must consider the applicable prescription on this appeal. Defendants raised the exception of prescription of one year in the trial court and reurge their plea on appeal. It is their position that the plaintiffs' claim is for fraud in the transfer of 79 shares of stock; hence, the one year prescriptive period applicable to torts provided in La.C.C. art. 3536 is controlling so as to bar the present action.
On the other hand, the plaintiffs contend that the action is not one sounding in tort, but is an action for breach of contract or fiduciary obligation or is some form of personal action which is only barred by the lapse of ten years as set forth in La.C.C. art. 3544.
We believe that the plaintiffs should prevail on this issue. This is a suit arising ex contractu. Lilliedahl & Mitchel v. Avoyelles Trust & Sav., 352 So.2d 781 (La.App. 3rd Cir.1977). The purpose of this action is to recover a certain number of shares of stock, or the value thereof, arising out of a stock-for-stock agreement, which was allegedly breached on or about April 1, 1971, or not earlier than February 24, 1970. In their petition, the plaintiffs claim that it was not until 1979 that they learned of the alleged breach. We hold that the plaintiffs' claim has not prescribed under the applicable prescriptive period as set forth in La. C.C. art. 3544. See Lilliedahl & Mitchel v. Avoyelles Trust & Sav., supra.

RIGHT OF ACTION
Plaintiffs contend that the trial court erred in its ruling that they had no right of action pursuant to La.R.S. 12:91.[5] The basis for the court's ruling was that an action for breach of fiduciary duty could only be asserted by way of a shareholder's derivative action, citing Beyer v. F & R Oilfield Contractors, Inc., 407 So.2d 15 (La. App. 3rd Cir.1981), writ denied, 411 So.2d 451 (La.1982). In Beyer, the suit was brought by several minority shareholders to have illegally disbursed funds for excessive salaries and bonuses to officers returned to the corporation. It is established that where the breach of fiduciary duty causes loss to a corporation itself, the suit must be brought as a derivative or secondary action. However, that is not the case where the breach of a fiduciary duty causes loss to a shareholder personally. In case of personal loss, the shareholder may sue individually to recover his loss. Junker v. Crory, 650 F.2d 1349 (5th Cir.1981); Noe v. Roussel, 310 So.2d 806 (La.1975); 29 La.L.Rev. 691 (1969).
By the 1968 amendment[6] of La.R.S. 12:91, the fiduciary relationship has been expressly extended to shareholders. Accordingly, we hold that under the cited statute, as amended, an individual shareholder has a direct action for breach of the fiduciary duty which corporate officers and directors owe to shareholders.

CAUSE OF ACTION
Plaintiffs allege that because the stock certificate in question was never transferred or cancelled in accordance with the endorsement and delivery requirements of La. *1235 R.S. 12:624,[7] they were entitled in 1971 to issuance of reclassified stock based upon 202 shares. On this issue, the trial court sustained the defendants' exception of no cause of action, ruling that Section 624 was enacted for the benefit of third parties.
The compliance or noncompliance with the statute is not controlling as to whether or not stock has been transferred between the parties. Rather, whether there has been a transfer or not depends upon the intent of the parties. Succession of Dunham, 408 So.2d 888 (La.1981). Thus, it is of no consequence as to whether La. R.S. 12:624 was or was not complied with in determining whether or not the plaintiffs have stated a cause of action. While the trial court was correct in its understanding that the statute was designed to afford protection to third persons who deal with record owners of stock, it erred in ruling that the plaintiffs had not stated a cause of action. The allegation pertaining to the invalid transfer or cancellation of the stock certificate forms but a part of the general claim against the defendants for breach of contract and fiduciary duty. The allegation cannot be isolated and subjected to an exception of no cause of action. In disposing of an exception of no cause of action, all well-pleaded allegations of the petition must be accepted as true; and such allegations must be liberally construed in favor of the plaintiff. Every reasonable interpretation must be afforded the language of the petition so as to maintain the sufficiency of the petition in order to assure the plaintiff his day in court. Adserv Corp. v. Lincecum, 385 So.2d 432 (La.App. 1st Cir.1980).
The crucial issue in disposing of an exception of no cause of action is whether the plaintiff has alleged facts entitling him to relief under any theory, rule of law or statute whatsoever. Bamber Contractors, Inc. v. Henderson Bros., Inc., 345 So.2d 1212 (La.App. 1st Cir.1977). We believe that plaintiffs have alleged sufficient facts showing that they are entitled to relief if the evidence supports their allegations. The exception of no cause of action should have been overruled.
For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are to be paid by the defendants-appellees, and all other costs are to await a final determination on the merits.
REVERSED AND REMANDED.
NOTES
[1] The Baton Rouge store was incorporated under the name of Wilson's Wholesalers and Distributors, Inc.; the Jackson store as Wilson Wholesale and Distributors; and the Gulfport store, Wilson's Inc.
[2] Judge Parker found "Woodrow was clearly in possession, at least in 1972, of facts which would excite inquiry into the possibility of fraud and raise the duty of the investor to exercise due diligence to make further investigation into those facts. Plaintiff then had two years, the applicable prescriptive period, in which to make further investigation to uncover the alleged actual fraud and to bring a timely action." The basis for using the 1972 date as the time when the limitation period commenced to run, according to Judge Parker, was that Woodrow testified that after he received the letter of April 1, 1971 (showing that he only had 88 shares in Wilco to be converted into H.J. Wilson stock), he knew or should have known that something was amiss. After this (in 1972), Woodrow started asking Wilson to show him the Company records. It was in late 1972 that Woodrow actually reviewed the records with the chief finance officer of the Company. Then, Wilson retransferred 35 shares to Woodrow and told Woodrow that no more shares would be transferred to him.
[3] Cf. Sargent v. Genesco, Inc., 492 F.2d 750 (5th Cir.1974); Nortek v. Alexander Grant & Co., 532 F.2d 1013 (5th Cir.1976).
[4] Judge John V. Parker of the federal district court very aptly and succinctly set forth in Findings of Fact and Conclusion of Law as follows:

"The court's next inquiry is whether the state pendent claims should also be dismissed.
"In the leading case, United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court set out the basic principles which should be applied where federal and state claims are presented together:
`Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' 86 S.Ct. at 1139.
"In Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), in a threejudge-court context, the court held that mootness of the federal constitutional question did not deprive the court of power to hear pendent nonconstitutional claims.
"In Pharo v. Smith, 621 F.2d 656 (1980), the Fifth Circuit held that it is within the discretion of the district courts to dismiss pendent claims without prejudice when the federal claims are dismissed before trial, but noted on rehearing:
`That a plaintiff's state law claims will be time-barred if dismissed is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims once the federal claims have been resolved.' [Pharo v. Smith] 625 F.2d 1226, 1227 [5th Cir.1980].
"The court also commented upon Rosado v. Wyman:
`In Rosado, substantial time and energy had been expended, and the state law issue was "essentially one of federal policy [where] the argument for exercise of pendent jurisdiction is particularly strong." Id. [397 U.S.] at 403-404, 90 S.Ct. at 1213, quoting United Mine Workers v. Gibbs, 383 U.S. at 727, 86 S.Ct. at 1139. Thus, where the federal jurisdictional base is lost after trial or after a substantial part of the case has been completed, the trial court may still retain a pendent state-law claim. Florida East Coast Railroad v. United States, 519 F.2d 1184 (5th Cir.1975).' 621 F.2d at 675.
"In Tinker v. DeMaria Porsche-Audi, Inc., 632 F.2d 520 (5th Cir.1980), the court stated:
`Once the district court properly dismissed Tinker's federal claims, its exercise of pendent jurisdiction over Tinker's state claims lay within the court's discretion. In Re Carter, 618 F.2d 1093 (5th Cir.1980). In exercising that discretion, some of the factors the district court should consider are "whether the federal claims were dismissed before trial, whether the state claims predominate, whether the state claims are closely tied to questions of federal policy, and whether the jury is likely to be confused by the treatment of divergent legal theories of relief."` 632 F.2d at 523.
"Here the federal cause of action will be dismissed before trial on the merits, and the state claims do not dominate since fraud is encompassed in the federal statute. Although the state claims are closely tied to federal policy, demanding truth in the sale of securities, the state must enforce the same policies in upholding the state cause of action. If the pendent state claims are dismissed, plaintiff will not be prejudiced since a state action was filed at the same time the federal action was filed. Because the federal cause of action is time-barred and must be dismissed, the state claims will be dismissed without prejudice. In accord, Prince v. Wallace, 568 F.2d 1176 (5th Cir.1978) and Daniels v. All Steel Equipment, Inc., 590 F.2d 111 (5th Cir.1979)."
[5] La.R.S. 12:91 provides;

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions. Nothing herein contained shall derogate from any indemnification authorized by R.S. 12:83."
[6] As amended by Act No. 105 of 1968.
[7] La.R.S. 12:624 reads:

"A. Title to a certificate and to the shares represented thereby can be transferred only:
(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.
B. The provisions of this Section shall be applicable although the charter or articles or incorporation or code of regulations or bylaws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferrable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.
[Repealed by Acts 1978, No. 165, § 6, eff. Jan. 1, 1979]