533 So.2d 82 (1988)
John S. BORDELON, Plaintiff-Appellant,
v.
Douglas A. COCHRANE, Jr., et al., Defendants-Appellees.
No. 87-670.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Rehearing Denied November 21, 1988.
Writ Denied January 27, 1989.
*83 Durio, McGoffin & Stagg, Steven G. Durio, Kermit Doucet, Lafayette, for plaintiffappellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Roy C. Cheatwood, Nancy S. Degan, New Orleans, Chris A. Verret, Lafayette, for defendants-appellees.
Before DOMENGEAUX, KNOLL and KING, JJ.
KNOLL, Judge.
John S. Bordelon sued Cochrane Subsea Acoustics, Inc. (Subsea) and its directors, Douglas A. Cochrane, Jr. (Cochrane), Fred Styer (Styer), Jan Madden Cochrane and Jean Nolan Cochrane (Jan and Jean Cochrane), contending Subsea, Cochrane and Styer breached certain stockholder agreements between them and Bordelon, and that Cochrane, Styer, and Jan and Jean Cochrane breached their fiduciary duties to the corporation and to Bordelon, as a shareholder. The trial court ruled that Bordelon was a minority stockholder and as such he was not able to personally obtain damages either for the defendants' alleged mismanagement of the corporation or for an alleged breach of the shareholders' agreement. Accordingly, it sustained defendants' exceptions of no right of action and no cause of action.
Bordelon appeals, contending the trial court erred in sustaining defendants' exceptions of no right of action and no cause of action, and raises the following issues: (1) as a shareholder of Subsea he has a direct right of action against defendants as officers and directors of the corporation for breach of a fiduciary duty which caused him to personally suffer loss; (2) as a shareholder of Subsea he has the right to bring a derivative action against defendants as officers and directors for breach of a fiduciary duty which caused loss to the corporation; (3) he has a right of action against defendants for breach of the shareholder agreements to which he and defendants were parties; (4) he has stated a cause of action for breach of a fiduciary duty, derivatively on behalf of the corporation and individually for breach of contract. We affirm in part, reverse in part and remand.

FACTS
Bordelon purchased 10% of the authorized but unissued Subsea capital stock on October 28, 1981, for $20,000, and entered into two shareholder agreements with Subsea and Cochrane, the only other shareholder at the time. In the agreements, Cochrane agreed to vote his stock so that Bordelon would have preemptive rights and a seat on the board of directors. Cochrane also agreed to vote his stock against any modification in the classification, voting power or other shareholder rights contained in the articles of incorporation. Furthermore, the agreements granted Bordelon *84 an option to purchase an additional 10% of the outstanding Subsea stock, provided him with a right, i.e., the "put right", to require either Cochrane or Subsea to purchase his Subsea stock at a price tied to the corporate net worth on a book value basis, and limited the amount of monthly remuneration Cochrane, his family, and affiliated businesses could receive. In consideration, Bordelon agreed to join Cochrane on a continuing basis as a co-guarantor or co-endorser for up to $100,000 in Subsea's obligations incurred subsequent to the date of the agreements.
On May 19, 1982, in consideration of Bordelon increasing the amount of his personal guaranty from $100,000 to $300,000, these agreements were later amended to reduce the stock option price, to lengthen the term of the stock option, and to increase the remuneration limitations placed on Cochrane.
In connection with Bordelon's purchase of an additional 10% of Subsea stock from Cochrane, on April 7, 1983, Bordelon, Cochrane, Subsea, and Styer, a new shareholder, again amended the shareholder agreements relative to the "put right" previously granted to Bordelon, and Styer formally ratified all prior shareholder agreements entered between Bordelon, Subsea, and Cochrane.
On March 29, 1985, Bordelon sued Cochrane and Subsea, contending: (1) that Cochrane breached the shareholder agreements by refusing to convey a sufficient number of shares to constitute Bordelon as the owner of 20% of the outstanding Subsea stock; and (2) Cochrane breached his fiduciary duty to Subsea and Bordelon by: (a) refusing additional capital contributions and a loan from third-party investors; (b) arbitrarily frustrating third-party offers to Bordelon, a minority shareholder, to purchase his Subsea stock; and (c) amending the articles of incorporation to shorten the notice requirements for special meetings to one day, removing the annual election of directors, and lengthening the term of directors to 5 years. Accordingly, Bordelon sought damages on behalf of Subsea because Cochrane's actions retarded the corporate growth and increased its liabilities, and further damaged Bordelon personally by making him unable to participate effectively in the corporation and to market his minority interest. Bordelon further sought the appointment of a receiver pursuant to LSA-R.S. 12:151 because his rights as a minority shareholder were violated and his interest endangered.
Defendants filed peremptory exceptions of no cause and no right of action to Bordelon's original petition which were sustained by the trial court on May 5, 1986.
On May 20, 1986, Bordelon filed an amending and supplemental petition realleging the claims raised in his original petition, and added Styer, and Jan and Jean Cochrane as defendants. Bordelon further asserted claims against the defendants based on the breach of the shareholder's agreements, contending: (a) Cochrane received remuneration higher than that provided in the shareholder agreements; and (b) he attempted to issue stock to nonshareholders with the intent to reduce Bordelon's ownership of 20% of the corporate stock. He also urged that these actions also constituted breach of the fiduciary duty owed to him as a shareholder and to Subsea, and further asserted a claim against Jan and Jean Cochrane stating that they failed to attend directors' meetings and abused the use of proxies. Bordelon, as a representative of Subsea, further sought damages for the loss the corporation suffered because of defendants' breach of their fiduciary duties. Defendants filed new exceptions of no right and no cause of action which were granted by the trial court. This appeal then ensued.

PEREMPTORY EXCEPTIONS
The function of the peremptory exception is to have plaintiff's action declared legally nonexistent, or barred by effect of law. Eastlake Trading Co. v. Iberia Trading Co., 398 So.2d 1146 (La.App. 4th Cir.1980), writ denied, 401 So.2d 977 (La.1981). An exception of no cause of action tests the legal sufficiency of a petition by determining whether the law affords a remedy to the plaintiff for the particular grievance *85 alleged. Darville v. Texaco, Inc., 447 So. 2d 473 (La.1984). In deciding an exception of no cause of action, the court accepts the facts alleged in the petition, without reference to any extraneous supporting or controverting evidence, and determines whether the law affords any relief to plaintiff if those facts are proved at trial. Robinson v. North American Royalties, Inc., 470 So.2d 112 (La.1985). An exception of no right of action raises the question of whether the plaintiff belongs to a particular class in whose exclusive favor the law extends the remedy, or whether the plaintiff has the right to invoke a remedy which the law extends only conditionally. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
Bordelon contends that he stated a cause of action and that he has a right of action under three distinct theories: (1) under LSA-R.S. 12:91 he can individually sue for the alleged loss he personally suffered due to defendants' alleged breach of their fiduciary duties; (2) under LSA-R.S. 12:91 he has a derivative right as a shareholder against defendants as officers and directors of Subsea for the alleged breach of their fiduciary duties to Subsea which caused the corporation to suffer loss; and (3) he can personally sue defendants for their alleged breach of the shareholder agreements that were executed.

CORPORATE LOSSES
Bordelon contends, relying on Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1st Cir.1983), and Coury v. Coury Moss, Inc., 510 So.2d 1316 (La.App. 3rd Cir.1987), that he can individually recover from defendants as officers and directors of Subsea for the losses he allegedly suffered as the result of the breach of their fiduciary duties. We disagree.
LSA-R.S. 12:91 provides:
"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarilly prudent men would exercise under similar circumstances in like positions. Nothing herein contained shall derogate from any indemnification authorized by R.S. 12:83."
In alleging the breach of fiduciary duty by Cochrane, Bordelon directs our attention to four basic areas. First, he cites Cochrane's failure to pursue capital contributions and a loan from a third-party investor. Second, Bordelon mentions Cochrane's failure to allow Bordelon to disclose information he possessed by virtue of his role as corporate counsel. Third, he cites the shortening of time for notice of meetings and the extension of the director's terms to 5 years. Fourth, he mentions Cochrane's attempted action, alleged without particularity, to dilute the value of all currently outstanding and unissued stock.
Bordelon also joins Styer in the breach of a fiduciary duty by attempting to take action to dilute the value of his Subsea stock. As to Jan and Jean Cochrane, Bordelon alleged that they breached their fiduciary duty by failing to attend directors' meetings, and by executing proxies in Cochrane's favor.
We find the Wilson decision distinguishable on the facts. In Wilson it is clear that the purpose of plaintiff's action was to recover a certain number of shares of stock, or value thereof, arising out of a stock-for-stock agreement; in that regard Wilson's cause of action was for a breach of contract between him and the corporation. To the contrary, in the case sub judice the breaches of fiduciary duty alleged are not contractual in nature.[1]
For reasons explained herein, we also choose not to follow Coury. In Coury a minority stockholder sued his corporation and the majority stockholder derivatively and personally for damages incurred. Coury's petition alleged that the corporation and its president were guilty of gross and persistent ultra vires acts which *86 caused him to suffer a loss in the value of his stock and caused the use of the corporation's funds for the president's personal benefit. Another panel of this court reversed the trial court's dismissal of Coury's personal action against the corporation and its president, relying on an analysis involving the legal theory of piercing the corporate veil. In so doing, that panel did not consider this circuit's earlier opinion in Beyer v. F & R Oilfield Contractors, Inc., 407 So.2d 15 (La.App. 3rd Cir.1981), writ denied, 411 So.2d 451 (La.1982). In Beyer, minority shareholders of a corporation sought damages individually from directors and officers of a corporation for fraudulent and ultra vires acts, including: excessive payment of salaries and bonuses; denial of access to the corporate books; failure to insure corporate property; extension of credit to poor credit risks; improper obtainment of corporate loans; and the illegal removal of directors. In addressing R.S. 12:91, and plaintiffs' argument that this statute extended the right of recovery to them individually, this court in Beyer at page 17, stated:
"Although this statute extends the officers' and directors' fiduciary relationship to the shareholders, it does not extend a direct right of action by the shareholders against the officers and directors."
The Coury court did not distinguish between personal rights of action, such as an alleged contract between the plaintiff and defendant, and corporate rights of action, such as breaches of fiduciary duties owed by the defendant to the corporation, for which a derivative suit would have been the only proper means of proceeding. Wilson, supra; Beyer, supra; LSA-C.C.P. Arts. 591-611.
After carefully analyzing the statutory and jurisprudential law, we find our decision in Beyer correctly addresses the corporation's rights of action in the present case. The breaches of fiduciary duty alleged by Bordelon are not contractual and clearly fall within the holding of Beyer that an "action for mismanagement or fraud belongs to the corporation not to the stockholders." Beyer, supra at page 16. Furthermore, such a holding recognizes the long-standing concept that a corporation's assets belong to it, and no individual shareholder has a property right in them. Orlando v. Nix, 171 La. 176, 129 So. 810 (1930). Therefore, we conclude that Bordelon did not have a legally recognized right to personally recover the alleged losses.

STOCKHOLDER'S DERIVATIVE ACTION
Bordelon next contends that he stated a cause of action for a stockholder's derivative action on behalf of Subsea against its other officers and directors for the breach of their fiduciary duty to the corporation, and that he was entitled to the appointment of a receiver. We disagree.
In the early case of Watkins v. North American Land & Timber Co., 107 La. 107, 31 So. 683 (1902), the Supreme Court addressed the question of shareholder derivative actions and the availability of that action 31 So. at page 686, as follows:
"The reluctance of courts to interfere at the instance of a stockholder, or of a minority of the stockholders, with the affairs of a private corporation, is very pronounced; but their right and their duty so to interfere in a proper case is indubitable, and the question recurring in every case is whether the particular case is a proper one for interference. Mr. Thompson, in his work on Corporations (4 Thomp. Corp. § 4487), states the law on this subject as follows: `Sec. 4487. Equity will not Interfere on Questions of Corporate Management or Policy. Other decisions emphasize the principle that courts of equity cannot undertake the management of all the private corporations in the country; that in the absence of usurpation, of fraud, or of gross negligence, they will not interfere, but will allow the majority to rule, and leave dissatisfied stockholders to redress their grievances through ordinary corporate methods. The governing principle has been clearly outlined by Vice Chancellor Green in the following manner: "Individual stockholders cannot question in judicial proceedings the corporate acts of directors, if the same are within the powers *87 of the corporation, and in the furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment. Questions of policy, of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors, if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation." According to the reasoning of another court, the acts of the officers of the corporation, which do not violate the constitution or charter of the company, will not be controlled by any court, at the instance of a stockholder, unless it is shown to have been a willful abuse of their discretion, or the result of bad faith, or of a willful neglect or breach of a known duty. Upon this subject it has also been said by Peckham, J.: "To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests. Otherwise the court might be called upon to balance probabilities of profitable results to arise from the carrying out of the one or the other of different plans proposed by or on behalf of different shareholders in a corporation, and to decree the adoption of that line of policy which seemed to it to promise the best results, or at least to enjoin the carrying out of the opposite policy. This is no business for any court to follow."'"
In the same vein the court later in Orlando, supra, 129 So. at page 811, stated:
"If the corporation sustains a loss by reason of mismanagement or fraud upon the part of its officials, the right to recover for the loss is an asset of the corporation, and not of the stockholders. It is only in extreme cases that a stockholder is permitted to sue for damage done a corporation, and even then the right does not arise until an ineffectual demand has been made on the corporation to institute the suit, and the suit, when brought, must be brought in behalf of the corporation, which alone is entitled to the amount recovered." (Emphasis added.) (Citations omitted.)
Likewise, with regard to the appointment of a receiver, in Fincher v. Claiborne Butane Co., Inc., 349 So.2d 1014, at page 1017 (La.App. 2nd Cir.1977), the Second Circuit stated:
"A minority of the stockholders of a corporation is not entitled to a receiver because of dissatisfaction with the policy and management of a majority of the officers and directors in the absence of any showing of fraud or insolvency...."
We conclude that the various alleged breaches of fiduciary duty as outlined hereinabove, even assuming their truthfulness, when viewed in light of Watkins, Orlando, and Fincher, do not constitute the extreme case in which a shareholder may invoke judicial intervention or the appointment of a receiver. Therefore, we find that the trial court did not err in its determination that Bordelon failed to state a cause of action necessary for a shareholder's derivative suit.
We have also examined whether Bordelon has stated a cause of action for a stockholders derivative action based on the allegations that Cochrane received funds in excess of that agreed upon in the shareholder agreements. It is clear that the jurisprudence has recognized that a shareholder may sue derivatively for the payment to directors of salaries which are out of proportion to the services rendered or *88 which constitute the payment of illegal commissions. See Carey v. Dalgarn Const. Co., 171 La. 246, 130 So. 344 (1930). Our analysis of Bordelon's pleadings reveal that although he has alleged payment to Cochrane in excess of that agreed upon, there is lacking any allegation that Cochrane did not render services for the payments made or that the commissions constituted an illegal payment. We find Bordelon's allegations insufficient, therefore, Bordelon failed to state a cause of action to justify a shareholder derivative action.

BREACH OF THE SHAREHOLDER AGREEMENTS
Bordelon next contends that he had both a right of action as signatory of the shareholder agreements, and a cause of action because of the effect of Louisiana contract law, against Cochrane, Subsea and Styer for breach of the shareholder agreements.
From the outset, we note that Jan and Jean Cochrane were not parties to the shareholder agreements and, therefore, it is clear that there was no right or cause of action by Bordelon against them.
As we perceive the allegations Bordelon made in support of his action for breach of contract against Cochrane, Styer and Subsea, they are: (1) failure to admit additional capital contributions to Subsea; (2) refusal to allow disclosure of information which may have aided a sale of Bordelon's minority interest; (3) shortening the time for notice of special directors' meetings; (4) deletion of the annual election of the board of directors and the extension of their term to 5 years; (5) Cochrane's receipt of excessive remuneration in violation of the stockholder agreement; (6) attempting to issue more corporate stock to dilute Bordelon's minority interest; (7) the excessive utilization of proxies; and (8) Cochrane's failure to sell him sufficient stock to make him a 20% shareholder.
We have carefully reviewed the various stockholder agreements and their amendments, and find only two items relied upon by Bordelon addressed therein, namely: the sale of less than 20% of the stock and Cochrane's excessive remuneration. There is no contractual basis for the remaining allegation, therefore, those allegations are meritless.
In his original petition Bordelon alleged that Cochrane failed to convey sufficient stock on April 7, 1982, the date of the second amending shareholder agreement, to make him the owner of 20% of the Subsea stock. In his supplemental petition, Bordelon adopted this allegation by reference. Despite the importance of this transaction to the contract between Cochrane and Bordelon, there is no argument in Bordelon's brief relative to this allegation. Accordingly, we construe Bordelon's failure to argue this particular point in brief as a waiver of that argument before the appellate court.
The only remaining issue relates to Bordelon's allegation that Subsea, Cochrane, and Styer, by ratification of the shareholder agreements entered into prior to his becoming a shareholder, breached the shareholder agreements by paying sums to Cochrane, his spouse, siblings, collaterals or parents in excess of the maximum amount provided for by the shareholder agreements. As stated hereinabove, in reviewing an exception of no cause of action, well pleaded allegations of fact must be presumed true. See also Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). Any doubt is resolved in favor of the action and against the exception. Bielkiewicz v. Rudisill, 201 So.2d 136 (La. App.3rd Cir.1967).
Subsea, Cochrane and Styer argue that Bordelon fails to set forth any specific facts indicating that Cochrane was paid amounts above the contractual limitations placed upon remuneration. Because a plaintiff's petition is vague does not mean that it is fatally deficient. A vague or ambiguous petition lends itself to a dilatory exception of vagueness under LSA-C.C.P. Art. 926, not to an exception of no cause of action. Ranger v. Jean Fore Mtg. Co., 364 So.2d 622 (La.App.2nd Cir.1978). In the case sub judice, defendants originally filed an exception of vagueness, but pursuant to a joint motion to dismiss this exception, it *89 was dismissed with prejudice. Bordelon specifically alleged that Cochrane and/or his family received remuneration greater than that agreed upon in the shareholder agreements. Therefore, we conclude that Bordelon's petition states a cause of action for breach of the shareholder's agreements by this allegation.
As a general rule, when a petition states a cause of action as to any ground or portion of a demand, an exception of no cause of action should be denied. Yasar v. Cohen, 483 So.2d 1099 (La.App.4th Cir. 1986). The purpose of this rule is to prevent piecemeal litigation and to avoid multiple appeals. Yasar, supra at page 1100. An exception to the general rule that an exception should be overruled if any part of the petition can withstand the exception, does, however, exist when separate and distinct causes of action are set forth in one petition. Moore, Romero & Co. v. Nan Corp., 458 So.2d 675 (La.App.3rd Cir. 1984).
In the present case, we concluded that Bordelon attempted to assert three separate causes of action. Our analysis of those distinct causes of action resulted in our determination that Bordelon failed to state a cause of action to personally recover for the losses alleged, and failed to state a cause of action for a shareholder's derivative action for the alleged losses due the corporation. For the reasons explained in Moore, Romero & Co., supra, we conclude that the trial court properly dismissed those two causes of action. However, we find that it was erroneous for the trial court to also dismiss Bordelon's claim for breach of the shareholder's agreements.
For the foregoing reasons, the judgment of the trial court is affirmed as it pertains to the dismissal of Bordelon's action to recover personally as a shareholder and derivatively on behalf of Subsea, and in so far as he attempts to recover from Jan and Jean Cochrane for breach of the shareholder's agreements. The judgment of the trial court is reversed as far as it dismissed Bordelon's claim against Subsea, Cochrane and Styer for breach of the shareholder's agreements; therefore, this case is remanded to the trial court as to this issue only. Costs of this appeal are assessed two-thirds to Bordelon and one-third to Subsea, Cochrane and Styer.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DOMENGEAUX, J., concurs in the result, being of the opinion that Coury v. Coury Moss, Inc., is distinguishable, but not erroneous.
NOTES
[1] Bordelon's claims regarding the breach of stockholder's agreements will be treated separately herein.