669 So.2d 556 (1996)
Windsor S. DENNIS
v.
Sherman COPELIN, Lloyd Villavaso and Nicholas J. Campo.
No. 94-CA-2002.
Court of Appeal of Louisiana, Fourth Circuit.
February 1, 1996.
Rehearing Denied March 26, 1996.
*557 LeRoy A. Hartley, LeRoy A. Hartley & Associates, New Orleans, for Appellants, Sherman Copelin and Lloyd Villavaso.
Bruce A. North, David L. Colvin & Associates, Gretna, for Appellee, Windsor S. Dennis.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Dr. Windsor S. Dennis sued Sherman Copelin, Lloyd Villavaso, and Dr. Nicholas J. Campo, seeking damages as a result of the loss of his investments in two privately held corporations. He sought recovery under Louisiana securities laws, Louisiana's Unfair Trade Practices law, the business corporation laws, and general negligence. The trial court denied recovery to the plaintiff under the securities and unfair trade practices laws, but found both Mr. Copelin and Mr. Villavaso liable for breach of fiduciary duty, presumably under the business corporation law, and for general negligence. The court awarded $145,927.37 to Dr. Dennis, using as its measure of damages the total amount of disbursements which it found were illegal. Both Mr. Copelin and Mr. Villavaso have appealed the award and Dr. Dennis has cross-appealed the denial of recovery under the securities laws and seeks clarification of the date on which interest on the judgment commences to run. For the following reasons, we reverse the award in favor of plaintiff, and enter judgment in favor of defendants.

1. Facts
At all relevant times, defendant Sherman Copelin was an officer, director, and shareholder in New South Distributors (NSD) and General Imaging (GI), and a shareholder in Family Medical Care Centers of America (FMCCA). He was a director and president of Marketing Services (MS). NSD was a minority owned wholesale liquor distributorship *558 which had a contract to supply Schwegmann brand liquor to Schwegmann Giant Supermarkets. GI was incorporated in order to develop and market a new high resolution printer, the EP1000. FMCCA was a corporation which planned to establish and manage medical clinics on sites adjacent to Schwegmann Giant Supermarkets. MS was a corporation which performed business management services to NSD. Defendant Lloyd Villavaso was not an officer or director of any of these corporations, but was hired to perform accounting services for NSD, GI, and FMCCA. He owned stock in GI. Defendant Dr. Nicholas Campo was the chairman of the board of NSD and GI and president of FMCCA, and an officer of MS. Dr. Campo had filed for and presumably been discharged in bankruptcy from these claims asserted by the plaintiff.
None of these corporations are defendants in this suit. The only named defendants are Mr. Copelin, Mr. Villavaso, and the bankrupt Dr. Campo.
Sometime during 1985 or 1986, Dr. Dennis became interested in purchasing stock in FMCCA. He was aware that Mr. Copelin and Dr. Campo were shareholders in FMCCA, and were attempting to set up medical clinics adjacent to Schwegmann Supermarkets. He consulted with Randolph Waesche, his financial planner, in an effort to determine whether he should invest in FMCCA. Dr. Dennis ultimately did not purchase any stock in FMCCA, but learned that two other corporations in which Mr. Copelin and Dr. Campo were stockholders were seeking investors.
One of these corporations was NSD, which had secured a contract with Schwegmann Supermarkets to supply wholesale store brand liquor to the stores, and which possibly could secure a contract to supply name brand liquor to the stores as well. Dr. Dennis and Mr. Waesche realized that there was a significant degree of risk in investing in a new business which had not yet purchased any liquor to sell or sold any liquor, but believed the company would be successful based upon its contract to sell store brand liquor to Schwegmann.
Mr. Waesche reviewed a pro forma financial statement provided by Mr. Villavaso and questioned him extensively and in detail regarding the statement. Mr. Waesche became impressed with the potential of this business and advised Dr. Dennis to invest in it. Dr. Dennis purchased twelve shares of stock for $6250.00 per share for a total investment of $75,000 in NSD.
The pro forma statement provided to plaintiff and Mr. Waesche did not include an expense item for Louisiana state liquor taxes. It appears that Mr. Copelin and Mr. Villavaso were unaware of these taxes at the time the statement was prepared. The record does not reflect that either knowingly withheld that information.
Ultimately, NSD collapsed because the additional expense of the state liquor tax increased the cost of the liquor, causing the business to suffer losses. No arrangements were ever completed to allow NSD to sell name brand liquor to Schwegmann stores. NSD filed for relief in bankruptcy and all the shareholders lost money on their investments.
In 1986, during the months of February, March, April, and May, NSD disbursed over $125,000 to MS, to Mr. Villavaso, to FMCCA, and to GI. Mr. Copelin testified at trial that Dr. Campo had the checkbooks of the corporation and was writing many checks to these various entities, particularly FMCCA, of which Mr. Copelin was unaware. He stated that the checks that were written to MS, his company, were anticipated in the pro forma, and that Mr. Villavaso was the accountant for NSD and entitled to be paid for his work. Mr. Copelin also testified that some of the funds paid to MS were for bills of NSD for which MS was entitled to be reimbursed. The pro forma indicated that MS had a contract to perform management services for NSD at a rate of $205,000 per annum.
Dr. Dennis also expressed interest in investing in GI, another corporation in which Mr. Copelin and Dr. Campo were principals and for which Mr. Villavaso was the accountant. Dr. Dennis attended a meeting with Mr. Copelin, Dr. Campo, Mr. Villavaso and other individuals at the NSD building in New Orleans. He saw a demonstration of the *559 product (the EP1000, a high resolution printer) they were hoping to develop, but knew that it was not yet operational because there was a component that was missing. Dr. Dennis and Mr. Waesche both knew that the defendants had to bring in an outside consultant to secure the component. Several contracts, which were dependent upon completion of the project, were being discussed. Dr. Dennis and Mr. Waesche were well aware that no printers had been sold. Dr. Dennis, as well as his financial adviser, was also aware that Dr. Dennis would be investing a larger proportion of cash than the other shareholders, but that the others had invested "sweat equity" in attempting to hire the needed consultants and obtain the missing component to manufacture the EP1000. In April, 1986, Dr. Dennis purchased stock in GI for a total investment of $125,000.
GI was never able to acquire the missing component and only one printer was actually sold.[1] After Dr. Dennis purchased stock, Dr. Campo wrote several checks to FMCCA and to himself. Dr. Dennis and all other investors lost much, if not all, of their investments.
Dr. Dennis initially filed suit against these defendants in the United States District Court, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., the Securities and Exchange Act of 1934, and various state law claims. The district court dismissed all federal claims with prejudice and dismissed the state law claims without prejudice. Plaintiff then filed this suit in Orleans Parish's Civil District Court.

2. Trial Court Findings
After bench trial on the merits, the court denied the plaintiff recovery on his request for damages based upon a sale of unregistered securities, misrepresentations in the sale of securities, and unfair trade practices, but ultimately found Mr. Villavaso and Mr. Copelin liable, because they "violated their contracts of employment" as accountant and managing consultant "through their omission, some of which border on commissions." The court found that Mr. Villavaso was grossly overpaid as accountant and that he should have read the bank statements to determine whether Dr. Campo was managing the finances of NSD and GI successfully. As to Mr. Copelin, the trial court found that his corporation, MS, did not properly provide the services which it was contracted to provide to NSD and GI.
Significantly, the court did not find that either Mr. Villavaso or Mr. Copelin committed fraud. It held:
The court has previously indicated that some of the losses are attributable to the failure of certain anticipated sources of revenue to materialize. It is also stated this disappointing turn of events can't be completely laid at the feet of Mr. Copelin and Mr. Villavaso.
The court does fault said defendants for breaches of their contracts with the investors in said businesses and they are at the very least liable for the illegal disbursements shown hereinabove.
By implication, the trial court found that it was Dr. Campo who made the disbursements which he termed "illegal." However, it found Mr. Villavaso and Mr. Copelin liable based on their "breaches of contracts with the investors in said businesses."
The court considered whether Dr. Dennis was "limited to a derivative recovery which would benefit the corporations, NSD and GI," but concluded that returning the funds to NSD and GI, both defunct corporations, would not be practical or justifiable because it would "put plaintiff back in business with Mr. Copelin and Mr. Villavaso." The court also noted that the defendants did not challenge plaintiff's capacity to sue them directly.

3. Issues on Appeal
Mr. Villavaso and Mr. Copelin appeal the award against them, assigning several specifications of error. They contend that the trial court erred in awarding damages against them individually for alleged breach of fiduciary duties owed as officers and directors of the defunct corporations because plaintiff had no right of action against them personally. Alternatively, they argue that *560 even if plaintiff did have a personal right of action against them, they did not breach any duty owed to him. They also argue that the trial court erred in awarding plaintiff damages for breach of contract and negligence, where plaintiff was neither party to the contract nor owed any duties as a third party.
Dr. Dennis answered the appeal, arguing that the trial court erred in denying liability under La.R.S. 51:701 et seq., for misrepresentation in the sale of securities, and under Louisiana Civil Code articles 1847 and 2315. By amended answer Dr. Dennis also questions whether interest should be awarded on the judgment from the date of the original judicial demand in federal court, or from the date he tendered his stock to NSD and GI and asked for return of the purchase price.

4. Analysis
The first issue to be addressed is whether the plaintiff had a right of action against Mr. Villavaso and Mr. Copelin for breach of their fiduciary duties arising out of their positions with NSD and GI. Such a duty has its basis in La.R.S. 12:91, which states in pertinent part:
Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.
The trial court found a breach of this duty in assessing liability against Mr. Copelin and Mr. Villavaso.
Mr. Villavaso was neither an officer nor director of either NSD or GI, or, for that matter, FMCCA or MS. Because he was neither an officer or director of the corporations he did not owe a fiduciary duty to Dr. Dennis so that the imposition of liability against him on this basis cannot stand.
Mr. Copelin was an officer and director of NSD and GI. The trial court considered whether a shareholder could sue an officer or director directly for breach of fiduciary duty, rather than proceed through a shareholder's derivative action, and ultimately concluded that the shareholder could proceed in this matter, relying on Coury v. Coury Moss, Inc., 510 So.2d 1316 (La.App. 3d Cir.1987). In Coury, the plaintiff minority shareholder filed suit against the majority shareholder individually, seeking to impose liability on the shareholder individually for alleged fraud or deceit. The appellate court reversed the trial court's judgment sustaining the exception of no right of action, finding that the plaintiff should be allowed to pierce the corporate veil as was allowed in Wilson v. H.J. Wilson Company, Inc., 430 So.2d 1227 (La. App. 1st Cir.1983), writ denied, 437 So.2d 1166 (La.1983). Coury, 510 So.2d at 1318.
However, Coury was faulty in failing to distinguish between a personal right of action, such as was addressed in Wilson, and a corporate right of action seeking redress for breach of fiduciary duty, as is present here. The plaintiff in Wilson was seeking to recover shares of stock which he claims were due to him personally as a result of a breach of a stock purchase agreement, i.e., a breach of contract. This is a personal action by the plaintiff against a stockholder. Bordelon v. Cochrane, 533 So.2d 82 (La.App. 3d Cir. 1988), writ denied, 536 So.2d 1255 (La.1989).
In contrast, Dr. Dennis' claim against Mr. Copelin is to remedy losses to the corporations that allegedly caused them to become insolvent. Such a claim to recover illegally disbursed funds can only be brought against a corporation through a shareholder's derivative suit, wherein the shareholder is only a nominal plaintiff and the recovery is for the corporation. Beyer v. F & R Oilfield Contractors, Inc., 407 So.2d 15, 16-17 (La.App. 3d Cir.1981), writ denied, 411 So.2d 451 (La. 1982).[2] The Court in Bordelon agreed with the Beyer decision's holding that actions for mismanagement or fraud based upon breach of fiduciary duties by corporate officers and directors belong to the corporation, not to *561 individual shareholders, and may only be redressed in a shareholder's derivative action. 533 So.2d at 86. This same result has been reached in Robinson v. Snell's Limbs and Braces, 538 So.2d 1045, 1048 (La.App. 4th Cir.1989) and Palowsky v. Premier Bancorp, Inc., 597 So.2d 543, 545 (La.App. 1st Cir. 1992). Therefore, breach of the fiduciary duty imposed by La.R.S. 12:91 cannot support the award to Dr. Dennis.
The second and third grounds upon which the trial court assessed liability against Mr. Villavaso and Mr. Copelin were for breach of contract and negligence. The trial court found that Mr. Villavaso had a contract to perform accounting services for NSD and GI, that he had breached the contract, and was negligent in failing to discover the transactions by Dr. Campo which the trial court found to be improper. The court also found that Mr. Copelin, as a principal in MS, the corporation which had a contract to provide management services of NSD, was liable for breach of contract and for negligence in failing to detect Dr. Campo's actions. The trial court did not find that either Mr. Villavaso or Mr. Copelin committed fraud, but held them liable based upon their failure to detect and correct it.
Dr. Dennis was not a party to the contract between Mr. Villavaso and NSD and GI, nor was he a party to the management contract between MS and NSD. He is a third party in these contexts. One who is not a party to a contract has no claim for the breach of it, as that right belongs to the obligee. La.Civil Code art. 1758. Further, corporate officers, employees and agents do not owe duties to third parties and cannot be held liable to third persons for negligence, mismanagement, and omissions in a commercial context. Goodwin v. Agrilite of Louisiana, 26,061, p. 5 (La.App. 2d Cir. 9/21/94), 643 So.2d 249, 253; Korson v. Independence Mall I, Ltd., 595 So.2d 1174, 1178 (La.App. 5th Cir.1992).
Nor is there is a relationship between Dr. Dennis and either Mr. Villavaso or Mr. Copelin that would be a basis upon which to impose a duty owed directly to him, such as the duty of a professional to his client.
Thus, the trial court's judgment against Mr. Villavaso and Mr. Copelin individually for breach of fiduciary duty under La.R.S. 12:91, for breach of contract, and for negligence and mismanagement must be reversed.
Dr. Dennis cross-appeals, contending that the district court improperly found that the defendants are not liable for misrepresentations in the sale of securities. The trial court made the factual finding that the several claims of misrepresentation prior to the sale of the stock were not justified. Dr. Dennis and Mr. Waesche were given a full opportunity to, and did, review the pro forma financial statement prior to purchasing the shares of NSD. Dr. Dennis met with the outside consultants who were supposed to supply the missing component to complete the EP1000 printer which GI intended to manufacture. In both instances, the businesses were not yet fully operational and had not made a single sale at the time the stock was purchased. Dr. Dennis and Mr. Waesche both acknowledged that there is substantial risk in investing in a closely held corporation whose business was just starting. The trial court found no illegal misrepresentation by either Mr. Copelin or Mr. Villavaso in the sale of the stock of NSD and GI.
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and reasonable inferences of fact and credibility determinations should not be disturbed on review. Alphonse v. Omni Hotels Management Corp., 94-0157, p. 1 (La. App. 4th Cir. 9/29/94), 643 So.2d 836, 838. Upon reviewing the entire record, we find no manifest error. The trial court's findings on this claim are supported by the record and we affirm on this issue.
The decision of the trial court in favor of plaintiff is reversed. The costs of this appeal are to be borne by the plaintiff/appellee.
REVERSED.
NOTES
[1] GI no longer operates, and possibly has been dissolved or filed for bankruptcy.
[2] The Beyer court did note that this long-standing jurisprudential rule was established prior to the amendment of La.R.S. 12:91 in 1968, which extended the duties of corporate officers and directors to shareholders. However, as the comments to the amendment referred to shareholders' secondary or derivative actions, the court found that no procedural change was intended.