528 So.2d 235 (1988)
Ned DORE d/b/a Dore-Dyn, Plaintiff-Appellee,
v.
WHC LEASE SERVICE, INC., Defendant-Appellant.
No. 87-627.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1988.
*236 Partee, Waldrip, Mott & Evans, Norman A. Mott, III, New Orleans, for defendant-appellant.
Sonnier, Hebert & Hebert, Fred W. Davis, Abbeville, for plaintiff-appellee.
Before FORET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
Ned Dore, dba Dore-Dyn, sued WHC Lease Service, Inc., (WHC), of Lafayette, Louisiana, his former employer, for a bonus for services rendered between May 1, 1985, and January 30, 1986, the last day of his employment. WHC denied any obligation, contending that its bonus plan, as modified in 1984, provided for payment of a bonus only if the employee stayed employed a whole fiscal year (here May 1 April 30). The trial court after trial ruled in plaintiff's favor, awarding him $8,357.17. WHC appealed, and plaintiff answered the appeal seeking an increase in the bonus award, and seeking also an award for statutory penalties and attorney's fees. We are going to amend the award of interest in the judgment; otherwise, we affirm the judgment of the trial court.
FACTS
Dore went to work for WHC as its general manager in August 1980. He ran the company. When he first joined WHC, it was basically a contract gauging firm in the oil industry. Dore expanded the operation to include consulting services, and WHC became a company that could oversee the entire operations of an oilfield. The company made more money after he went to work for it.
Dore's pay before 1984 was expressed in a written agreement, as follows:
"TO WHOM IT MAY CONCERN:
Effective February 1, 1981
The following is an agreement between George L. Crain, Jr. and Ned J. Doré. The following represent the percentages *237 of profit to be paid as bonus, based on work obtained for and performed by WHC, INC. and WHC Lease Service, Inc. Ned Doré is to receive:
1. 10% of profit, less $5,200.00, for WHC Lease Service contract guaging, before expenses of supervisor and foreman.
2. 40% of gross revenue for consulting services for Ned Doré and Ram Boutte.
3. 45% of net profit obtained through consulting services utilizing consultants other than supervisors or foreman.
4. 3% of Gross revenues for work obtained from WHC, INC.'s personnel or equipment."
In 1984, Dore and George Crain, who was WHC's president and one of its three stockholders, negotiated a new agreement calling for a $3,500 monthly salary, plus 30% of net profit to be paid as a bonus. This was expressed in a memorandum directed to the payroll office, signed by both Dore and Crain. This memorandum said:
"TO: PAYROLL
Effective May 1, 1984, Ned Dore's salary is to be increased to (from $2,300.00) $3500.00 per month. Bonuses paid to Ned as of this date are to be cancelled and a new bonus system is to be instituted. Ned is to receive 30% of Net revenue before taxes and bonuses to George L. Crain, Sr., Azalie Holland, and George L. Crain, Jr. as determined by the audited financial statement."
Dore voluntarily quit the job on January 30, 1986. On this date, nine months had elapsed in the fiscal year. He requested the proportion of three/fourths of his bonus for that fiscal year. When this was refused, he filed suit. The suit demanded $19,486.27. This figure represented 30% of what Dore claimed to be the net revenues before taxes and bonuses as determined by computer generated monthly financial reports for the nine months he had worked.
The year before, which was the fiscal year ending April 30, 1985, the bonus which Dore received was $30,606. In that fiscal year the company's net income before taxes was $102,000. For the fiscal year ending April 30, 1986, which is the fiscal year in question, WHC's income before taxes was only $37,143. This was established by the testimony and report of a certified public accountant who audited the financial statement for that fiscal year. According to this CPA, the company simply did not make as much money in 1986 as it did in 1985. He testified that 30% of $37,143 came to $11,142.90.
WHAT THE TRIAL JUDGE DID
The court in its reasons for judgment indicated that the plaintiff did not have to complete the year's service in order to receive a bonus, because no such requirement was made in the parties' 1984 written agreement. Accordingly, the trial court concluded that Dore was entitled to a bonus.
The trial court reasoned that the calculation of the bonus had to be on the basis of the audited financial statement, in accordance with the written agreement, and that this took place only at the conclusion of the fiscal year. Not until then could the bonus be calculated.
The court then took the net income before taxes as shown on the audited financial statement, reduced that figure by one-fourth (to eliminate the three months of the fiscal year that plaintiff did not work for the company), and calculated 30% of that, for an award of $8,357.17.
The judgment of the trial court did not award penalty benefits or attorney's fees indicating that the trial court did not apply the provisions of La.R.S. 23:632.
The judgment of the trial court awarded legal interest from date of judicial demand.
THE ISSUES
There are four issues posed by the appeal and the answer to the appeal. They are: (1) whether any bonus was due; (2) if so, how the bonus was to be calculated; (3) was Dore entitled to penalties and attorney's fees; and (4) interest allowed on the judgment.
WHETHER ANY BONUS WAS DUE
This issue requires a determination of whether the parties intended that Dore *238 would have to remain employed for the entirety of a fiscal year in order to earn a bonus. We agree with the trial court that this was not the intent of the parties.
Courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. La.C.C. arts. 2045 and 2046; Scott v. Noel, 506 So.2d 1313 (La.App. 2nd Cir.1987).
The parties in this case made no provision in their contract for the situation of termination of Dore's employment. La.C. C. art. 2054 declares:
"When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose."
The words equity and usage, as intended in the above Article, are defined in the following Article 2055, as follows:
"Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
"Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation."
Although the trial court made no express mention of Article 2055, it is apparent that it took into consideration equity and usage. Throughout their relationship a bonus was provided as a substantial part of Dore's remuneration for services with WHC. This part of his income differed from his monthly salary in the respects that it was payable once a year, and it was directly responsive to the employer's income. It was incentive pay. Nevertheless, the principal cause of the obligation to pay the bonus was to compensate Dore for his services. The encouragement of continued employment was a supplemental cause. It would not be right to allow WHC's supplemental reason of promoting continued employment to override the principal reason for the bonus as compensation for its employee. See Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977). The bonus in the present case was not a gratuity, but rather in the nature of delayed compensation, or bargained-for compensation for services rendered during this period. Pender v. Power Structures, Inc., 359 So.2d 1321 (La.App. 4th Cir.1978). To impose on Dore what would amount to a forfeiture of the bonus actually earned up to the time of his resignation is contrary to the principles of equity. By such a forfeiture WHC would have an unfair advantage and be unjustly enriched.
The trial court also commented on the evidence that another employee of WHC received a bonus when he left even though he did not complete the fiscal year. Although the nature of the services performed by this employee was different from Dore's general management responsibilities, the trial court considered this evidence of usage.
In our opinion, the trial court's conclusion was the correct one. Equity and usage in this instance regards as implied in the contract that the parties intended that the bonus would be paid, proportionately, if the employment was terminated at any time other than the end of a fiscal year.
Since we have found that the contract did not contemplate a forfeiture, it is unnecessary for us to consider whether if it had, the forfeiture would have been unenforceable by the prohibition against wage forfeiture under La.R.S. 23:634.
HOW THE BONUS WAS TO BE CALCULATED
Dore argued this: the 30% should be based on the net income before taxes calculated for the nine months that he worked during that fiscal year. Dore wanted this figure to be determined and used because during the three months that remained in the fiscal year after he left, the company's fortunes took a turn for the *239 worse. He argued that the formula for determining his bonus of 30% of net income before taxes for the entire fiscal year, reduced by one-fourth, resulted in a substantially lower bonus than would a calculation based on the company's profit picture using only the first nine months.
We agree with the trial court. The method of calculating the bonus was in accordance with the contract between the parties. The contract expressly provided that the net revenue figure was to be determined by the audited financial statement. WHC's accountant testified that there was only one audited financial statement, and that was done at the end of the fiscal year. He testified that there were no monthly audited financial statements. The computer generated monthly financial reports, which were merely the company's record-keeping procedure, were not the same as the audited financial statement referred to in the contract.
PENALTIES AND ATTORNEY'S FEES
We affirm the trial court's denial of statutory penalties and attorney's fees under La.R.S. 23:631 et seq.
R.S. 23:631 imposes a duty on employers to pay an employee who is discharged or resigns the amount then due under the terms of his employment, "whether the employment is by the hour, day, week or month", within three days following the discharge or resignation period. R.S. 23:632 imposes penalties and attorney's fees on those who do not pay in the manner directed by R.S. 23:631.
It is well settled that these statutory provisions are coercive or penal in nature, must be strictly construed, and should not be extended beyond the plain wording of the statute. Keith v. Little, 434 So.2d 548 (La.App. 2d Cir.1983). Where the employee's rate of pay is indefinite and his employment is not by the hour, the day, the week or the month, these statutes are inapplicable. Van Dung v. Tel Ag Services, Inc., 407 So.2d 1339 (La.App. 3rd Cir.1981).
In the present case the bonus due Dore was payable annually after the audited financial reports. The payment was not by the day, the hour, the week, or the month, and the statutes are not applicable. The trial judge was accordingly correct in not applying them.
INTEREST ON THE JUDGMENT
The trial court awarded legal interest from date of judicial demand. WHC complains that this was improper and urges that interest should be awarded only from the date of judgment. The judgment as to interest was in error, but the error does not benefit WHC. Actually, the judgment should have awarded interest from the date the bonus became due.
According to La.C.C.P. art. 1921, the court shall award interest in the judgment as prayed for or as provided by law. La. C.C. art. 2000 in effect in 1984, at the time of this case, read in pertinent part:
"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at any rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more."
The auditor's report in evidence indicates that the audit of the financial statements was completed and delivered on June 9, 1986. Since Dore answered the appeal asking for an increase in the amount of damages, we will amend the judgment to provide interest from June 9, 1986, at 12% per annum, on the amount of the award.
For the foregoing reasons the judgment of the trial court is amended to eliminate the award of legal interest from date of judicial demand and to provide interest on the amount of the award at 12% per annum from June 9, 1986. In all other respects the judgment of the trial court is affirmed, at the costs of defendant-appellant.
AMENDED; AND AS AMENDED, AFFIRMED.