564 So.2d 814 (1990)
Robert H. WARD, et al., Plaintiffs-Applicants,
v.
TENNECO OIL COMPANY, Defendant-Respondent.
No. W89-1046.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1990.
Rehearing Denied August 8, 1990.
*816 Perret, Doise, Daigle, Longman, Russo & Zaunbrecher, Gary J. Russo, Lafayette, for plaintiffs-applicants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John G. Torian, II, Thomas G. Smart, Lafayette, for defendant-respondent.
Before DOUCET, LABORDE and KING, JJ.
LABORDE, Judge.
We granted a writ of certiorari in this case to consider the correctness of the trial court's judgment which granted in part defendant-respondent's motion for a partial summary judgment and which denied a motion to compel discovery filed by plaintiffs-relators.

FACTS
In its Reasons for Ruling, the trial court set forth the pertinent facts and legal questions at issue:
"In May of 1988, TENNECO INC. decided to sell most of its oil and gas business. An affidavit of Karl Stewart, Secretary of TENNECO INC., indicates that the corporate structure of TENNECO INC., at that time was as follows: TENNECO OIL COMPANY was a wholly-owned subsidiary of TENNECO CORPORATION which was a wholly-owned subsidiary of TENNESSEE GAS PIPELINE COMPANY, which was a wholly-owned subsidiary of TENNECO INC. All were Delaware Corporations. TENNESSEE OIL COMPANY[1] [sic] included two operating units, TENNECO OIL EXPLORATION AND PRODUCTION (E & P) and TENNECO OIL PROCESSING AND MARKETING (P & M).
According to the affidavit of the Secretary, TENNECO OIL COMPANY itself was not sold, because in some instances assets of businesses managed by E & P and P & M were conveyed to various corporate subsidiaries of TENNECO OIL which were then sold. In other instances the actual assets were sold by TENNECO OIL COMPANY or its affiliates to third parties.
It is important to TENNESSEE OIL COMPANY [sic] to keep certain key employees through the date of sale, in order to keep the value of the company from declining, which would result should these employees elect to leave their positions. They were offered a bonus in proportion to the sales price. The central dispute in this litigation concerns the mutual understanding of the parties as to the object of the sale, and the following letter is the primary documentary evidence of that intent:
CONFIDENTIAL
For: R.H. Ward
In the months ahead it is imperative that we maintain our nucleus of key employees within Tenneco Oil Exploration and Production. With the talent, commitment, and leadership you have demonstrated in the past, you are a critical part of that core group.
In recognition of that fact, I am pleased to inform you that you have been selected to participate in a special program designed to allow you to share in the sales price of our company. As a participant in the Tenneco Oil Exploration and Production Value Incentive Plan, you will be eligible for *817 a lump sum cash payment if the sales price for the company exceeds a minimum of $5.7 billion. Your award could range up to a maximum of $77,000 at a sales price of $7 billion.
We are relying on participants like you to make significant contributions toward one or more of these objectives:
1) INCREASE THE VALUE OF THE COMPANY by maximizing the effectiveness of its day to day business. This will demand outstanding performance in both technical and administrative areas.
2) INCREASE THE COMPANY'S ULTIMATE SALES PRICE by ensuring that potential purchasers recognize the true value of our company's assets and human resources.
3) HELP RETAIN OUR ORGANIZATION THROUGH THE DATE OF SALE by encouraging others through strong leadership, and by maintaining morale and teamwork.
Achieving these objectives will require significant contributions of time and energy on your part. But I assure you that, if achieved, these objectives will contribute both to your own welfare, and to the welfare of your fellow employees. The better we look as a company to a potential purchaser, the more viable we will be as an intact unit.
This program is limited in participation, so it is imperative that you maintain STRICT CONFIDENTIALITY. Violation of confidentiality could undermine the program's motivational intent. Therefore I ask that you discuss it only with the individuals who presented it to you. Additional points, as well as the payment schedule, are listed on the attached supplement.
I believe this plan will help us maximize the value of our company through encouraging the energetic leadership that we need. I want to express my deepest appreciation to you for helping make us one of the best in the business. We have a proud legacy to continue.
VALUE INCENTIVE PLAN SUPPLEMENT
You must materially contribute to the company's objectives of increasing value, increasing sales price, and maintaining the organization.
You must remain with the company until the date of sale.
This payment will be in addition to any other payments to which you may otherwise be entitled.
Award payments will be made at any sale price of $5.7 billion or more.
Award payments will increase as listed in the schedule below, up to a maximum level at a sale price of $7 billion.
Award payments for sale prices between the levels shown on the schedule will be interpolated, except for the minimum payment, which will be for a sale price range of $5.7 billion to $5.85 billion. The payment values shown below are rounded, while final payment will be based on the exact numbers.
Payments will be made in a lump sum, as soon after the date of sale as administratively possible.

 VALUE INCENTIVE TABLE
 (rounded amounts)
 SALES AMOUNT
 PRICE YOU
(billions) RECEIVE
 5.70-5.85 4,700
 6.00 15,000
 6.15 25,300
 6.30 35,700
 6.45 46,000
 6.60 56,700
 6.75 65,700
 7.00 77,000

Affidavits from twenty-four of the plaintiffs have been filed in the record which uniformly affirm (1) that the affiant was not advised by any company representative that the phrase `the company' meant anything other than TENNECO OIL COMPANY and (2) that the affiant believed that the phrase `the company' meant TENNECO OIL COMPANY.
Plaintiffs allege that in October of 1988, TENNECO INC. announced that the total sales price for `the company' *818 sold in segments to various bidders was Seven Billion Three Hundred Million ($7,300,000,000.00) Dollars, and that on December 19th each received a check that was not sufficient under the terms of the contract alleged. The letters to which these bonus checks were attached indicated that the bonus amounts were based upon a total sales price of Six Billion Four Hundred Thirty-Eight Million ($6,438,000,000.00) Dollars. Essentially, the case presents two questions: 1) Were the bonus plan payments to be based on the sale price of TENNECO E & P and TENNECO P & M? 2) Did TENNECO OIL COMPANY owe a duty to the plaintiffs, either contractual or fiduciary, to maximize the sales price to the detriment of its parent company?
The petitions of both groups of plaintiffs contain substantially the same allegations and arguments of law. First, plaintiffs ask for a Declaratory Judgment `recognizing and enforcing' the obligations of the defendant as written in the Plan commanding defendant to honor the commitment made in the Plan and pay plaintiff the amounts out-lined on the sliding scale based on a total sales price for the company of Seven Billion Three Hundred Million ($7,300,000,000.00) Dollars.
Secondly, plaintiffs argue that the failure to pay the full amount is a breach of contract in bad faith, and the demand is for full payment, legal interest, costs, attorney fees and other damages.

Plaintiffs also argue that TENNECO'S actions violated Texas Wage Statutes (LSA-R.S. 23:631 and Texas Revised Statute Article 5156) [sic]; that plaintiffs acted in reliance on TENNECO'S promise and changed their positions to their disadvantage and TENNECO'S benefit, thus triggering the doctrine of promissory estoppel; and that TENNECO OIL COMPANY was burdened by a fiduciary duty toward its employees which derived from the employer/employee relationship, and the bonus plan."
* * * * * *

ACTION OF THE TRIAL COURT
The trial court rendered partial summary judgment against plaintiffs on the following claims: 1) plaintiffs' claim for declaratory judgment; 2) plaintiffs' claim for penalties and attorney's fees based on Louisiana's Wage Payment Act; 3) plaintiffs' claims alleging breach of fiduciary duty.[2] The trial court denied all other portions of defendant's motion for summary judgment.
The trial court also rendered the following ruling denying plaintiffs' motion to compel discovery:
"IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs' Motion to Compel is denied as the discovery requests are overbroad (Interrogatory No. 1), and burdensome and not leading to relevant evidence (Request for Production Nos. 4, 5 and 6 as contained in Plaintiffs' Second Request for Production of Documents) on the main demand in light of the Court's above ruling on defendant's Motion for Partial Summary Judgment."

THE REQUEST FOR A DECLARATORY JUDGMENT
At issue in this case is whether or not the trial court appropriately granted a partial summary judgment.
First, we note that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, together with supporting affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. Thibodeaux *819 v. Southwest La. Hosp. Ass'n., 488 So.2d 743 (La.App. 3d Cir.1986).
LSA-C.C.P. art. 966(A) provides that:
"The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time."
LSA-C.C.P. art. 1915 reads in part as follows:
"Partial judgment
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969.
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury."
* * * * * *
It is clear from a reading of these articles, as well as from the jurisprudence interpreting them, that summary judgment may be granted for less than all of the relief for which the party prays.
However, it is also clear that a partial summary judgment must grant at least part of the relief prayed for by one of the parties; it cannot merely strike down a theory of the case. Pizzolato v. Field, 441 So.2d 1248 (La.App. 1st Cir.1983). Thus, unless specifically authorized by the Code of Civil Procedure, partial final judgments which do not grant all or part of the relief prayed for are not permitted, since to do so would promote piecemeal litigation and the uneconomical use of judicial time thereby frustrating the prompt resolution of issues. Serpas v. Ridley, 556 So.2d 134 (La.App. 5th Cir.1990).
In the instant case, plaintiffs seek a declaratory judgment "recognizing and enforcing" defendant's obligation as written in the value incentive plan to pay plaintiffs the amounts outlined on the sliding scale based on a total sales price for the company of Seven Billion Three Hundred Million ($7,300,000,000.00) dollars. The trial court granted partial summary judgment dismissing plaintiffs' claim for declaratory judgment as procedurally inappropriate.[3] We find the granting of partial summary judgment improper under these circumstances. The trial court's action does not, in itself, dispense with any of the relief claimed by plaintiffs, but only refuses plaintiffs' request to make a judicial declaration of their rights under the value incentive plan. However, the trial court declined to grant partial summary judgment on plaintiffs' claim that defendant's failure to pay the appropriate amounts pursuant to the sliding scale constitutes a breach of contract. This claim therefore remains viable. Thus, since no relief was granted by rendering a summary judgment disallowing the declaratory relief, we find that partial *820 summary judgment on plaintiffs' request for a declaratory judgment was improper.

LOUISIANA'S WAGE PAYMENT ACT
The trial court, relying on Dore v. WHC Lease Service, Inc., 528 So.2d 235 (La.App. 3d Cir.1988), granted partial summary judgment declaring that Louisiana relators do not have a claim under LSA-R.S. 23:631 et seq., of Louisiana's Wage Payment Act.[4] In Dore a bonus (which was actually in the nature of delayed compensation) was found by this court not to be a wage within the intendment of these statutes since the payment involved therein was not by the day, the hour, the week or the month. Accordingly, the court in Dore affirmed the trial court's denial of statutory penalties and attorney's fees under LSA-R.S. 23:631 et seq.
We agree with the trial court that in the case, sub judice, Louisiana's Wage Payment Act does not apply. It is well settled that these statutory provisions are penal in nature and must be strictly construed. Dore, supra. According to plaintiffs' petition, an employee had to remain with the company until the date of sale in order to participate in the value incentive plan. An employee could leave the company at any time; however, that employee would have no claim to any portion of the bonus. Clearly, under the plan, payment was not by the day, the hour, the week or month. Thus, statutory penalties and attorney's fees under LSA-R.S. 23:631 et seq., are not available to plaintiffs.
However, we note that defendant seeks a summary judgment on plaintiffs' claims under Louisiana's Wage Payment Act based on the argument that these statutes do not grant plaintiffs a cause of action under the facts alleged in this case. Whether or not a petition states a cause of action is a matter to be determined on a peremptory exception of no cause of action and not on a motion for summary judgment. A motion for summary judgment may not be used as a substitute for an exception of no cause of action. Brooks v. Prince, 465 So.2d 797 (La.App. 4th Cir. 1985); St. Romain v. Kenny, 454 So.2d 1163 (La.App. 4th Cir.1984). Thus, the defendant has chosen the wrong procedural vehicle to raise its argument on this issue.
Under LSA-C.C.P. art. 927, an appellate court can, on its own motion, take notice of a plaintiff's failure to state a cause of action. We choose to exercise this right as it pertains to plaintiffs' failure to state a cause of action based on Louisiana's Wage Payment Act.
The exception of no cause of action is a procedural device used to test the legal sufficiency of the petition. No evidence may be introduced to support or controvert the objection of no cause of action. LSA-C.C.P. art. 931. For purposes of ruling on the exception of no cause of action, the court must accept all allegations of the petition as true, and sustain the exception only if the law affords no remedy under any evidence that is admissible under the pleadings. Bellah v. State Farm Fire & Cas. Inc., 546 So.2d 601 (La.App.3d Cir.1989).
The general rule is that where a petition states a cause of action as to any ground or portion of a demand, the exception of no cause of action should be denied. The purpose of this rule is to prevent piecemeal litigation and to avoid multiple appeals. Rodriguez v. American Bankers Insurance Company of Florida, 386 So.2d 652 (La.1980). However, this court has recognized an exception to this rule when separate and distinct causes of action are included in one petition. Bordelon v. Cochrane, 533 So.2d 82 (La.App. 3rd Cir. 1988), writ denied, 536 So.2d 1255 (La. *821 1989). In the instant case, plaintiffs have attempted to set out a cause of action based on Louisiana's Wage Payment Act which is totally separate and distinct from all other causes of action contained in their petition.[5] This cause of action arises when an employer fails to pay the employee wages due him within 72 hours of his termination. For the reasons expressed above, we find that plaintiffs have failed to state a cause of action based on LSA-R.S. 23:631 et seq. Accordingly, we set aside the summary judgment based on Louisiana's Wage Payment Act and grant an exception of no cause of action. We also direct that plaintiffs be allowed fifteen days from the date this opinion becomes final to amend their petition or suffer dismissal of this cause of action. LSA-C.C.P. art. 934.

CLAIMS BASED ON THE BREACH OF A FIDUCIARY DUTY
The trial court also granted a partial summary judgment against plaintiffs on their various fiduciary duty claims. We find that the motion for summary judgment was an improper vehicle for the questioning of plaintiffs' theories of the case. Here again, the summary judgment granted by the trial court did not affect the relief prayed for by either the plaintiffs or the defendant, but rather, merely struck down some theories of the case. However, as previously explained, "[a] summary judgment cannot merely strike down a theory of the case; it must consider the ultimate relief prayed for." Pizzolato, supra, at 1249.
We also find that defendant's motion for partial summary judgment cannot be construed as adequately alleging an exception of no cause of action. Among the theories of recovery advanced by plaintiffs on their fiduciary duty claims is the contention that the value incentive plan, itself, gave rise to a fiduciary duty. Thus, since one of the theories concerning the fiduciary duty claims involves an interpretation of the value incentive plan, this cause of action is not separate and distinct from plaintiffs' breach of contract claim. Bordelon, supra. Consequently, the fiduciary duty claims cannot be dismissed since there is no exception for a partial no cause of action under Louisiana law. Moore, Romero & Co. v. Nan Corp., 458 So.2d 675 (La.App. 3d Cir. 1984).

MOTION TO COMPEL
Relators' motion to compel involved the following discovery requests:

INTERROGATORY NO. 1:
Please identify each and every person contacted, interviewed, or consulted by the Company as to:
a) The facts pertaining to any matter at issue in this suit;
b) Rendering an opinion as to any matter at issue in this suit.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:
Please produce all projections, predictions, studies and/or analysis of the economic impact of the renegotiated Gas Purchase and Sales Agreements referenced in plaintiffs' interrogatory No. 12.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:
Please produce all projections, predictions, studies and/or analysis of all bids received for the sale of Tenneco Oil Company.

REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:
Please produce copies of any and all documents and/or correspondence in which there are discussions relating to the failure of entities to bid on Tenneco Oil Company.
As to interrogatory No. 1, the trial court denied plaintiffs' motion to compel because it found their request was overly broad. The trial court has reasonable discretion to refuse or limit discovery of matters that are not relevant to the issues, *822 are unreasonably vexatious, or are tardily sought and which might delay trial. Michigan Wisconsin Pipeline Co. v. Sugarland Development Corp., 221 So.2d 593 (La. App. 3d Cir.), writ denied, 223 So.2d 872 (La.1969). Thus, while liberal pretrial discovery should be encouraged, it must not be conducted without regard to the rights of the party against whom it is invoked to be protected against undue hardship, loss or damage. LSA-C.C.P. art. 1426. In the instant case, involving a complex multi-billion dollar transaction, we conclude that the trial court did not abuse its discretion in finding that plaintiffs' request for identification of "each and every person contacted, interviewed, or consulted by the Company" was overbroad.
With respect to the requests for production of documents the trial court denied discovery on the grounds that these requests were burdensome and did not lead to relevant evidence. We disagree with the trial court's ruling in this matter. The test of discoverability is not the admissibility of the particular information sought, but whether the information sought appears reasonably calculated to lead to the discovery of evidence that is admissible. LSA-C.C.P. art. 1422; Ogea v. Jacobs, 344 So.2d 953 (La.1977).
Plaintiffs allege in their petition that, under the value incentive plan offered to them by defendant, they were entitled to be paid bonuses based on the price received from the sale of the assets of Tenneco Oil Company as a whole. Plaintiffs additionally claim in their amending petition that the renegotiation of certain gas purchase agreements by the defendant, during the period that plaintiffs were offered the plan, caused a substantial decrease in the value of Tenneco Oil Company and/or Tenneco E & P. Plaintiffs contend, inter alia, that defendant breached its contractual obligation to them either in failing to pay according to the value received for Tenneco Oil Company or in failing to pay the appropriate value for Tenneco E & P. The discovery plaintiffs seek relates to the issue of the value of the operating entity. This information appears reasonably calculated to lead to the discovery of admissible evidence. Thus, we find that the trial court should not have denied plaintiffs' request for production of documents Nos. 4, 5, and 6.

DECREE
For the foregoing reasons, the ruling granting partial summary judgment in favor of defendant-respondent is reversed. Judgment is rendered maintaining an exception of no cause of action as to plaintiffs-relators' claim based on Louisiana's Wage Payment Act, and plaintiffs-relators are given fifteen days from the rendition of this judgment to amend this claim to state a cause of action, if possible, upon penalty of dismissal of this claim.
The trial court's ruling on plaintiffs-relators' motion to compel discovery is affirmed as it pertains to Interrogatory No. 1 and reversed as it pertains to the Request for Production of Documents Nos. 4, 5, and 6.
WRIT GRANTED IN PART AND MADE PEREMPTORY; WRIT DENIED IN PART.

ON REHEARING
PER CURIAM.
In our original opinion herein we overlooked an issue raised and briefed by defendant/respondent: the objection that the information and documents sought by plaintiff's Motion To Compel related to Requests No. 4, 5, and 6 were confidential and should be protected by issuance of an appropriate protective order. The trial court did not address this issue, since it had denied the Motion To Compel, and we can not address this issue on the basis of the record, even though we have granted the writ in part and ordered production of the information and documents related to Requests No. 4, 5, and 6. For this reason we grant the Motion For Rehearing of defendant/respondent, for the limited purpose of addressing this issue, and amend our decree to remand the matter to the trial court with instructions to conduct a hearing on the request of defendant/respondent for a *823 protective order, if appropriate, with respect to the information and documents sought by plaintiff's Motion To Compel related to Requests Nos. 4, 5, and 6.
NOTES
[1] Here and below in the trial court's opinion, the reference should be to TENNECO OIL COMPANY as there is no TENNESSEE OIL COMPANY involved in the instant matter.
[2] The trial court dismissed any claims that Tenneco Oil Company was a negotiorum gestor for its employees or an agent or partner for its employees.
[3] The action for a declaratory judgment is governed by the provisions of LSA-C.C.P. art. 1871, et seq. A declaratory judgment is not in and of itself a cause of action. It is instead a procedural vehicle which has as its purpose "to settle and afford relief from insecurity and uncertainty with respect to rights, status, and other legal relations...." LSA-C.C.P. art. 1881; River Marine Contractors v. Bd. of Com'rs., 556 So.2d 284 (La.App. 4th Cir.1990). The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. LSA-C.C.P. art. 1871; Lantz v. Campbell, 376 So.2d 631 (La.App. 3d Cir.1979).
[4] LSA-R.S. 23:631 provides in pertinent part:

"A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation." [Emphasis added]
* * * * * *
LSA-R.S. 23:632 imposes penalties and attorney's fees on those who do not pay in the manner directed by LSA-R.S. 23:631.
[5] Our Supreme Court has characterized the phrase "cause of action" as consisting of those facts which form the basis of the right claimed by the party asserting an action. Trahan v. Liberty Mutual Insurance Co., 314 So.2d 350 (La.1975).