593 So.2d 1269 (1991)
EVERYTHING ON WHEELS SUBARU, INC.
v.
SUBARU SOUTH, INC.
No. 90 CA 0974.
Court of Appeal of Louisiana, First Circuit.
October 24, 1991.
Writ Granted February 21, 1992.
*1271 H. Evans Scobee, Baton Rouge, for plaintiff-appellant Everything on Wheels, Subaru, Inc.
William A. Morvant, Baton Rouge, for defendant-appellee Subaru South, Inc.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment sustaining a peremptory exception pleading the objection of no cause of action as to two causes of action.

FACTS
In 1987, plaintiff, Everything on Wheels Subaru, Inc., was formed to engage in retail automobile sales in the Baton Rouge area. At that time, plaintiff entered into a contract with the defendant, Subaru South, Inc., authorizing plaintiff to sell Subaru automobiles which defendant would supply. Plaintiff and defendant engaged in an apparently harmonious business relationship with defendant sending plaintiff inventory and plaintiff accepting the shipments. In March of 1988, plaintiff decided to terminate the franchise and sell the dealership at which time it began to refuse shipments of inventory.
On June 2, 1989, plaintiff filed the instant suit for damages. Thereafter, defendant filed a peremptory exception pleading the objection of no cause of action and dilatory exceptions pleading the objections of vagueness and prematurity. By judgment, dated September 14, 1989, the trial court sustained defendant's exception pleading the objection of vagueness and granted plaintiff an opportunity to amend its petition so as to state a cause of action against defendant.[1]
In its amended petition, plaintiff set forth four causes of action:
1. That defendant shipped more vehicles to plaintiff than could reasonably be expected to be sold in the ordinary course of business;
2. That defendant charged interest for units sent over and above the floor plan financing arrangement with plaintiff;
3. That defendant induced plaintiff to accept shipment of late model vehicles; and
4. That defendant violated the provisions of LSA-R.S. 32:1257 requiring the repurchase of inventory.
Defendant again filed exceptions pleading the objections of no cause of action, vagueness, and prematurity. By judgment, dated March 27, 1990, the trial court sustained defendant's exception pleading the objection of no cause of action as to causes of action one and four and denied defendant's exception with regard to causes of action two and three.
From this adverse judgment, plaintiff appeals assigning the following errors:
1. The trial court erred in maintaining defendant's exception of no cause of action Number 1, regarding the over shipment of initial inventory to EOW.
2. The trial court erred in dismissing plaintiff's cause of action Number 4, relating to the illegal actions of Subaru which directly resulted in the loss of a sales opportunity by EOW.

OBJECTION OF NO CAUSE OF ACTION
The peremptory exception pleading the objection of no cause of action is a *1272 procedural device used to test the legal sufficiency of the petition. Ward v. Tenneco Oil Company, 564 So.2d 814, 820 (La.App. 3rd Cir.1990). In other words, the exception pleading the objection of no cause of action tests whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. Bellah v. State Farm Fire and Casualty Ins. Co., 546 So.2d 601, 603 (La.App. 3rd Cir.1989); Bordelon v. Cochrane, 533 So.2d 82, 84 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1255 (La.1989). For purposes of ruling on the exception, the court must accept all of the allegations of the petition as true and sustain the exception only if the law affords no remedy under any evidence that is admissible under the pleadings. Ward v. Tenneco Oil Company, 564 So.2d at 820; Bellah v. State Farm Fire and Casualty Ins. Co., 546 So.2d at 603. No evidence may be introduced to support or controvert the objection of no cause of action. LSA-C.C.P. art. 931; Ward v. Tenneco Oil Company, 564 So.2d at 820.
The general rule is that where a petition states a cause of action as to any ground or portion of a demand, the exception pleading the objection of no cause of action should be overruled or denied. Ward v. Tenneco Oil Company, 564 So.2d at 820; Bellah v. State Farm Fire and Casualty Ins. Co., 546 So.2d at 603. The purpose of sustaining an objection of no cause of action is to dismiss the entire cause of action and not just a part of it. McGowan v. Ramey, 484 So.2d 785, 790 (La.App. 1st Cir.1986). As such, there is no objection for a partial no cause of action; this prevents piecemeal litigation and avoids multiple appeals. Rodriguez v. American Bankers Insurance Company of Florida, 386 So.2d 652, 652-53 (La.1980); Ward v. Tenneco Oil Company, 564 So.2d at 820. However, several courts in this state have recognized that when two or more causes of action are set forth in a petition, an objection of no cause of action may be sustained with regard to one cause of action and overruled with regard to the other. Ward v. Tenneco Oil Company, 564 So.2d 814; Brumfield v. Miller, 554 So.2d 829 (La.App. 1st Cir.1989); Bordelon v. Cochrane, 533 So.2d 82; McGowan v. Ramey, 484 So.2d 785.
Pleading the objection of no cause of action in response to a petition setting forth one or more causes of action is distinguishable from attempting to use that objection to eliminate a claim for various forms of relief or to remove a particular theory of recovery from plaintiff's petition. For example, in McGowan v. Ramey, 484 So.2d 785, the plaintiff set forth numerous causes of action in her petition, including actions for battery, truth-in-lending violations, and unfair trade practices. Defendant filed an exception pleading the objection of no cause of action, addressing plaintiff's claim for the recovery of treble damages for the alleged unfair trade practice. In affirming the trial court judgment overruling the exception pleading the objection of no cause of action, this court noted that there was only one unfair trade practice cause of action set forth in plaintiff's petition and that the claim for treble damages was an accessory claim to that action. Thus, dismissing the claim for treble damages would not result in the dismissal of the cause of action for unfair trade practices. As such, the exception was the improper vehicle to eliminate an isolated claim of relief. Likewise, in Brumfield v. Miller, 554 So.2d 829, the plaintiff filed suit individually and on behalf of her minor child for damages sustained when the child was a patient at a local hospital. Plaintiff specifically sought damages for the child's mental anguish, physical pain and suffering, impairment of future earning capacity, and medical expenses after the age of majority. Plaintiff also requested damages for her own mental anguish and for the child's past and future medical expenses. The defendant filed an exception raising the objection of no cause of action on the grounds that the law does not provide a cause of action for the recovery of damages for mental anguish due to the personal *1273 injury of a third person. This court reversed the trial court judgment sustaining defendant's objection, noting that plaintiff had one tort cause of action comprised of two claims for damages, one for mental anguish and one for medical expenses. This court determined that the trial court, in sustaining the exception as to the claim for mental anguish, had in effect sustained a "partial no cause of action." Accordingly, since the sustaining of a partial no cause of action is not permitted under the law, this court reversed the trial court judgment.
On the other hand, in Bordelon v. Cochrane, 533 So.2d 82, the plaintiff set forth several separate and distinct causes of action in his suit for breach of stockholders agreements and for breach of a fiduciary duty to the corporation and the shareholders. After the defendants filed an exception pleading the objection of no cause of action, the court determined that, although plaintiff attempted to set forth three separate causes of action, he had failed to state a cause of action as to two of those actions. As a result, the court determined that the trial court properly dismissed those two causes of action.
We recognize that on several occasions this court has stated that if the petition sets forth a cause of action, none of the other causes of action set forth in that petition may be dismissed on an exception pleading the objection of no cause of action. See Pines v. Dr. Carlos D. Moreno, Inc., 569 So.2d 203 (La.App. 1st Cir.1990); E. Lionel Pavlo Engineering Co. v. State, Department of Transportation and Development, 429 So.2d 454 (La.App. 1st Cir. 1983). In those cases, the exceptions were directed at the various requests for relief flowing from a single act or cause of action and/or set forth various theories of recovery for one claim for damage. Moreover, in those situations, the granting of the objection of no cause of action would not have served; the entire cause of action would not have been dismissed and piecemeal litigation would not have been prevented. However, when the plaintiff's petition sets forth separate distinct causes of action, the proof of which requires different factual bases, the objection of no cause of action is the proper vehicle to eliminate actions for which the law does not afford a remedy.
In the instant case, plaintiff contends that it stated causes of action under several distinct theories, namely (1) shipment of more vehicles to plaintiff than could reasonably be expected to be sold in the ordinary course of business; (2) unjust enrichment; (3) violation of LSA-R.S. 32:1257; and (4) tortious interference with a contract.

CAUSE OF ACTION NO. 1
Plaintiff contends that its original and amended petitions set forth a cause of action for violation of LSA-R.S. 32:1254N(6)(b) or for unjust enrichment.
A. VIOLATION OF LSA-R.S. 32:1254N(6)(b)
LSA-R.S. 32:1254N provides, in pertinent part, as follows:
(6) For a manufacturer of motor vehicles, a distributor, a wholesaler, a distributor branch or factory branch, or officer, agent, or other representative thereof:
(b) To attempt to induce or coerce, or to induce or coerce, any motor vehicle dealer to enter into any agreement with such manufacturer ..., or to do any other act unfair to said dealer; or to threaten to cancel any franchise or any contractual agreement existing between such manufacturer ... and said dealer.
Plaintiff alleged that, because it was inexperienced and new to the market, it was led to believe that the inventory received and accepted from defendant had been selected to augment the sales potential of plaintiff. Plaintiff acknowledged in its petition that the initial sales volume was *1274 promising, but that it soon became clear that the inventory being shipped to plaintiff by defendant was in excess of what could be sold. Plaintiff then concludes that, because defendant had superior knowledge and experience, it should not have sent plaintiff such a large inventory.
After carefully reviewing the original petition and amended petition filed by plaintiff in light of the plain wording of the statute, we cannot say that plaintiff's petitions state a cause of action for violations of LSA-R.S. 32:1254N(6)(b). Plaintiff does not allege any conduct by defendant which allegedly attempted to induce or coerce or coerced or induced plaintiff to accept the inventory as shipped. Rather, plaintiff's petition clearly alleges that its inexperience led it to accept the allegedly excess inventory from defendant. While this provision prohibits manufacturers and distributors from inducing or coercing the dealer into an agreement or act unfairly toward the dealer, it does not require that the manufacturer or distributor guarantee the business of the inexperienced dealer. Further, although plaintiff alleges that it refused to accept new inventory when it decided to sell the franchise after approximately one year in operation, its petition fails to allege that it ever attempted to stop the inventory it alleges was clearly excessive or that it ever refused to accept any vehicle or parts inventory upon delivery.
B. UNJUST ENRICHMENT
LSA-C.C. art. 2055 contains the moral maxim that "no one is allowed to enrich himself at the expense of another" and provides the basis for an action for unjust enrichment. Kirkpatrick v. Young, 456 So.2d 622, 624 (La.1984). Five prerequisites are necessary to support such an action: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a causal relationship between the enrichment and the impoverishment; (4) there must be an absence of justification or cause for the enrichment or impoverishment; and (5) there must be no other remedy at law. Kirkpatrick v. Young, 456 So.2d at 624; Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116, 120 (La.1974).
Plaintiff alleges that it stated a cause of action under the theory of unjust enrichment in that the shipments of excessive inventories referred to in the discussion of violations of LSA-R.S. 32:1254N(6)(b) enriched defendant and impoverished plaintiff. In its amended petition, plaintiff alleges in Paragraph 10D that:
The above described series of transactions was to the detriment of Subaru [EOW] in that the effect of the transactions was to deplete and, ultimately, exhaust all of EOW's credit and capital, and, further, to impose an unnecessary and unreasonably high interest expense upon EOW at a time when it could least afford it. Simultaneously, Subaru received benefit from the transactions in that it reduced its inventories and interest costs at the expenses of corresponding increases in inventory and interest costs imposed upon EOW.
Although plaintiff's petition does allege that defendants were enriched and that it was impoverished, there is no allegation that there was an absence of legal justification for the enrichment or impoverishment. Rather, plaintiff's amended petition clearly alleges that its management's inexperience in retail automobile sales caused it to accept the allegedly excessive inventory.
Therefore, we find that the trial court correctly determined that plaintiff failed to set forth a cause of action for violations of LSA-R.S. 32:1254N(6)(b) or unjust enrichment with regard to the allegations that defendant shipped more vehicles to plaintiff than could reasonably be expected to be sold in the ordinary course of business.

CAUSE OF ACTION NO. 4
Plaintiff contends that its original and amended petitions set forth a cause of action *1275 for violation of LSA-R.S. 32:1257 and for tortious interference with a contract.
A. VIOLATION OF LSA-R.S. 32:1257
LSA-R.S. 32:1257 provides, in pertinent part, as follows:
A. (1) In the event the dealer ceases to engage in the business of being a motor vehicle dealer or ceases to sell a particular make of motor vehicle and after notice thereof to the manufacturer by registered or certified mail return receipt requested within thirty days thereafter, the manufacturer shall repurchase all new and unused motor vehicles of the current or immediate prior model year and parts on hand that have not been damaged or substantially altered to the prejudice of the manufacturer while in the possession of the dealer. All demonstrators shall be repurchased by the manufacturer.
(2) The manufacturer shall make the required repurchase after the dealer terminates his franchise and within thirty days of the submission to it, by registered or certified mail return receipt requested, of a final inventory of motor vehicles and parts on hand. (emphasis added).
In its original and amended petitions, plaintiff alleged that, because of the mounting operating losses, it decided to terminate the franchise and sell the dealership and ceased accepting any new inventory in February or March of 1988. Plaintiff acknowledged that it subsequently engaged in negotiations with another company (Courtesy Motors) to sell the dealership assets and/or the franchise, but that the prospective purchaser did not want the parts and automobile inventory. Plaintiff alleges that on June 6, 1988, plaintiff's president contacted a representative of the defendant by telephone requesting that defendant accept the return of the parts and automobile inventory in accordance with LSA-R.S. 32:1257. However, plaintiff did not allege nor does it contend that it sent defendant written notice as required by LSA-R.S. 32:1257.
B. TORTIOUS INTERFERENCE WITH A CONTRACT
In 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228, 234 (La.1989), the Louisiana Supreme Court recognized the existence of the cause of action of tortious interference with a contract under very limited circumstances. The court noted that its "previous expressions barring absolutely any action based on a tortious interference with a contract" were annulled only insofar as they conflicted with its opinion in 9 to 5 and that it was not their intention to "adopt whole and undigested the fully expanded common law doctrine of interference with a contract, consisting of a `rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way.'" 538 So.2d at 234.
Given these considerations, the court determined that "in light of modern empirical considerations and the objectives of delictual law, an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct." 538 So.2d at 231.
Then the court, for the purposes of analysis, set forth the elements of an action against a corporate officer for intentional interference with contractual relations as follows:
(1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach *1276 the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty in its performance brought about by the officer.
538 So.2d at 234.
In its petitions, plaintiff alleged that, after it began negotiating for the sale of its franchise with Courtesy Motors, which had indicated to plaintiff that it did not wish to purchase the parts and automobile inventory, defendant contacted Courtesy Motors in an effort to sell Courtesy Motors additional inventory. Plaintiff contended that defendant's failure to accept the return of the parts and automobile inventory and the further attempts to sell inventory to Courtesy Motors prior to the completion of the sale between plaintiff and Courtesy Motors induced Courtesy Motors to withdraw from the transaction.
Plaintiff also alleged that after defendant instructed it to sell the parts and automobile inventory to Courtesy Motors, which offer was refused by Courtesy Motors, defendant advised plaintiff that absent an agreement to purchase the inventory the new franchisee would not be approved, in violation of LSA-R.S. 32:1254N(6)(j), which provides as follows:
To unreasonably withhold consent to the sale, transfer, or exchange of the franchise to a qualified transferee capable of being licensed as a new motor vehicle dealer in this state, provided the transferee meets the criteria generally applied by the manufacturer in approving new motor vehicle dealers and agrees to be bound by all the terms and conditions of the standard franchises.
Plaintiff, however, did not allege that Courtesy Motors met all of the criteria for approval or agreed to be bound by conditions of the standard franchise or that written request for consent to transfer the franchise to Courtesy Motors was ever submitted as required by LSA-R.S. 32:1254N(6)(k). In fact, in plaintiff's amended petition, plaintiff alleged, after Courtesy Motors withdrew from negotiations, it requested Courtesy Motors to continue negotiation until such time that plaintiff could seek legal action against defendant. However, Courtesy Motors was not interested in the delays which might result from such legal action.
As 9 to 5 makes clear, tortious interference is an intentional act; it is not for a negligent act. Frisard v. Eastover Bank For Savings, 572 So.2d 343, 347 (La. App. 5th Cir.1990). The facts pleaded by plaintiff do not place its claim within the limits set out in 9 to 5 in that plaintiff has not alleged that defendant intentionally interfered with anything. Further, plaintiff, in brief, acknowledges that it did not have a contract with Courtesy Motors.
After carefully reviewing the allegations of plaintiff's petition and the applicable law, we cannot say that the trial judge erred in maintaining defendant's exception pleading the objection of no cause of action with regard to a violation of LSA-R.S. 32:1257. The allegations of plaintiff's petition clearly show that plaintiff did not allege its compliance with the provisions of LSA-R.S. 32:1257. Further, the allegations of plaintiff's petition do not give rise to a cause of action for tortious interference with a contract.

CONCLUSION
For the above reasons, the judgment of the trial court, sustaining defendant's exception pleading the objection of no cause of action as to causes of action one and four and dismissing plaintiff's action as to these causes of action, is affirmed. The matter is remanded for further proceedings as to causes of action numbers two and three. Plaintiff is cast for costs on appeal.
AFFIRMED.
*1277
 EXHIBIT A
 NINETEENTH JUDICIAL DISTRICT COURT
 PARISH OF EAST BATON ROUGE
 STATE OF LOUISIANA
EVERYTHING ON WHEELS SUBARU, : NUMBER: 344,668
INC.
VERSUS : DIVISION: "A"
SUBARU SOUTH, INC. : FIRST SUPPLEMENTAL AND
 AMENDING PETITION OF
 : PLAINTIFF
TO THE HONORABLE, THE JUDGES OF THE NINETEENTH JUDICIAL DISTRICT COURT, WITHIN AND FOR THE PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA:
NOW INTO COURT, through undersigned counsel, comes EVERYTHING ON WHEELS SUBARU, INC. ("EOW"), who amends its petition in the above captioned matter pursuant to order of this court signed on September 14, 1989, in the following respects:

I.
By adding, between paragraphs 1 and 2 of the original petition, the following:

BACKGROUND FACTS

II.
By inserting the following between paragraphs 4 and 5 of the original petition:

FIRST CAUSE OF ACTION

III.
By adding an additional paragraph numbered 10A and to read as follows:

10A.
Officers and employees of EOW were led to believe that the inventory which Subaru was sending to EOW had been selected in order to augment the sales potential of EOW, in light of the relative inexperience of the management personnel of EOW in the import car business.

*1278 IV.
By adding an additional paragraph numbered 10B and to read as follows:

10B.
Although initial sales volume was promising, it soon became clear, based upon sales reports sent by EOW to Subaru, that the volume of cars Subaru was sending to EOW was in excess of what could be absorbed by the Baton Rouge market and/or sold by EOW.

V.
By adding an additional paragraph to be numbered 10C and to read as follows:

10C.
In accepting the cars sent to EOW by Subaru, EOW was relying on the superior knowledge and experience of agents and employees of Subaru, and upon the only custom and course of dealing between franchisor and franchisee which EOW had known. Upon information and belief, Subaru knew or should have known that the number of units being shipped to EOW by Subaru was far in excess of the prudent inventory levels for a Subaru dealership in the Baton Rouge area. Despite such actual or constructive knowledge, Subaru continued to send an excessive number units to EOW for sale.

VI.
By adding an additional paragraph to be numbered 10D and to read as follows:

10D.
The above described series of transactions was to the detriment of Subaru in that the effect of the transactions was *1279 to deplete and, ultimately, exhaust all of EOW's credit and capital, and, further, to impose an unnecessary and unreasonably high interest expense upon EOW at a time when it could least afford it. Simultaneously, Subaru received benefit from the transactions in that it reduced its inventories and interest costs at the expense of corresponding increases in inventory and interest costs imposed upon EOW.

VII.
By adding between paragraph 10D and paragraph 11 the following:

SECOND CAUSE OF ACTION

VIII.
By adding an additional paragraph to be numbered 11A, and to read as follows:

11A.
Subaru was aware, by virtue of the dishonor of its sales draft, that EOW had instructed Hibernia not to honor any future drafts which were drawn upon it in excess of the agreed upon floor plan financing amount. Additionally, EOW and Subaru had no agreement, express or implied, permitting Subaru to send cars to EOW in excess of the agreed upon floor plan financing. Nevertheless, Subaru sent the cars in question to EOW and, following the transaction, and without any express or implied agreement of any kind, charged interest on the transaction against EOW's parts account without the prior knowledge or consent of EOW.

IX.
By adding between paragraph 11A and paragraph 12 the following:

*1280 THIRD CAUSE OF ACTION

X.
By adding an additional paragraph to be numbered 15A and to read as follows:

15A.
At the time the 1987 model cars were sold to EOW by Subaru, Subaru knew or should have known that the promised East Coast market for these cars did not exist, and that it would be difficult, if not impossible, for EOW to market the 1987 model cars either to other dealers or to ultimate consumers without incurring substantial losses. At the same time, the transaction

benefited Subaru in that it permitted Subaru to dispose of stale inventory to an unsuspecting and inexperienced dealer for far more than the actual market price of the cars.

XI.
By adding between paragraph 15A and paragraph 16 as follows:

FOURTH CAUSE OF ACTION

XII.
By adding an additional paragraph to be numbered 27A and to read as follows:

27A.
Following the formal withdrawal by Courtesy Motors from negotiations with EOW, EOW contacted Courtesy Motors for the purpose of attempting to persuade Courtesy Motors to continue negotiations during the period of time it would be necessary for EOW to seek administrative and/or legal remedies to the unreasonable and unjustified actions of Subaru in refusing to accept Courtesy as the new franchisee unless Courtesy would purchase the new car and parts inventory.

XIII.
*1281 By adding an additional paragraph to be numbered 27B and to read as follows:

27B.
Courtesy Motors then advised that, in light of the potential legal difficulties and the time involved in legal proceedings between EOW and Subaru, Courtesy did not feel that it was in Courtesy's best interest to continue the sales negotiations, and Courtesy discontinued any further negotiations or discussions with EOW.

XIV.
By adding an additional subparagraph to numbered 31D and to read as follows:

31D.
Interest charges charged by Subaru to EOW's parts account for cars sent to EOW without the consent or approval of EOW, and without any agreement by EOW for interest.

XV.
By adding an additional paragraph to be numbered 32 and to read as follows:

32.
Petitioner prays for trial by jury of all issues herein.

XVI.
Petitioner hereby realleges and reiterates all of the allegations of fact, claims, and contentions in the original petition, and the prayer of same.

XVII.
By adding to the prayer the following:
Petitioner prays for trial by jury of all issues herein.
*1282
 By Attorneys,
 DURRETT, HARDIN, HUNTER, DAMERON &
 FRITCHIE
 By: _______________
 H. EVANS SCOBEE
 Bar Roll No. 11864
 Suite 1000, Premier Tower
 450 Laurel Street
 Baton Rouge, LA 70801
 Telephone: 504/344-0501

ORDER
Considering the foregoing prayer for trial by jury:
IT IS ORDERED that there be trial by jury herein conditioned upon petitioner furnishing good and solvent surety in the amount of $________ on or before the ___ day of ___, 19__.
Baton Rouge, Louisiana, this 5th day of Oct, 1989.
 
 JUDGE, 19TH JUDICIAL DISTRICT COURT
NOTES
[1] Plaintiff's amended petition setting forth its allegations to support its causes of action is attached hereto as "Exhibit A."