# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-718


**ROGER WORTHAM, M.D.**

**VERSUS**

**ACADIA HEALTHCARE, LLC, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20135893
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, Elizabeth A. Pickett, John E. Conery, and D. Kent Savoie, Judges.


**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

Cooks, J., concurs and assigns reasons.

Conery, J., concurs in part and dissents in part and assigns reasons.


Timothy W. Basden
Alan K. Breaud
Breaud & Meyers
600 Jeferson St., Suite 1101
Lafayette, LA 70502
(337) 266-2200
COUNSEL FOR PLAINTIF-APPELLANT:
    Roger Wortham, M.D.

**Matthew Brown**
**Michelle K. Buford**
**Sullivan Stolier Knight LC**
**1042 Camellia Blvd., Suite 2**
**Lafayette, LA 70508**
**(337) 233-6210**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Acadia Healthcare, LLC**

**PICKETT, Judge.**

Both Dr. Roger Wortham and his former employer, Acadia Healthcare, L.L.C., appeal the judgment of the trial court, which awarded Dr. Wortham amounts due under the terms of an employment contract and attorney fees, but not penalty wages.

## STATEMENT OF THE CASE

Dr. Wortham accepted a job with Acadia Healthcare in October 2010. He signed a one-year contract with an effective date of January 15, 2011. As part of the contract, Dr. Wortham assigned to the hospital the right to bill for his services in exchange for an annual salary of $180,000.00, an additional fee for certain consultations, reimbursement for certain expenses (including for licenses, dues, and continuing education), and a "bonus" of "50% of collections over costs." After the one-year term of the original contract expired, Dr. Wortham continued working for Acadia Healthcare without executing a new contract. Dr. Wortham tendered his resignation on January 24, 2013, effective on March 24, 2013.

Prior to leaving, Dr. Wortham requested information about the amount he had billed and the costs associated with his practice for the purpose of determining his bonus. He also submitted reimbursement for two continuing education conferences from July 2011 and July 2012, his 2012 and 2013 dues for state and national medical associations, and his 2011 and 2012 Board of Pharmacies license. He received no reply. When he continued to receive no reply, he hired an attorney to make inquiries.

Dr. Wortham filed a petition in district court on November 19, 2013, seeking bonus payments for 2012 and the partial 2013 year, the reimbursements that he submitted in January 2013, and penalty wages, and attorney fees in accordance

with La.R.S. 23:632. Acadia Healthcare maintained that the contract expired in January 2012 and Dr. Wortham was not entitled to bonus payments thereafter. It also disputed the reimbursement of expenses. Immediately before trial on January 13, 2014, Acadia Healthcare submitted the billing and expense information requested by Dr. Wortham. After a trial, the trial court awarded $21,729.93 in earned bonuses for 2012 and 2013, $7,021.76 in expense reimbursements, $11,409.50 in attorney fees, and $804.25 in litigation expenses. The trial court did not award penalty wages as sought by Dr. Wortham. Both Dr. Wortham and Acadia Healthcare have appealed.

## ASSIGNMENTS OF ERROR

On appeal, Acadia Healthcare asserts one broad assignment of error:

The trial court erred as a matter of law by enlarging the scope of the Employment Agreement when its language was clear and unambiguous, and, based on that erroneous ruling, by awarding [the p]laintiff bonuses, reimbursement for certain business and medical expenses, and attorney fees pursuant to the Louisiana Wage Payment Act, La.R.S. 23:23:631 *et seq.*

In his appeal, Dr. Wortham asserts one assignment of error: that the trial court erred in denying his claim for penalty wages under La.R.S. 23:632. He also asks for attorney fees for work done in this appeal.

## DISCUSSION

*The Employment Agreement*

Acadia Healthcare argues that the Employment Agreement is clear and unambiguous. It expired on January 14, 2012, and Dr. Wortham became an at-will employee on that date. It argues that the only compensation they owe him is the $180,000.00 base salary, which was timely paid upon his resignation. Acadia Healthcare claims the trial court erred as a matter of law in interpreting the

contract, and we should review the trial court's ruling de novo. We agree that the contract clearly expired on January 14, 2012. The question faced by the trial court was a determination of the terms of Dr. Wortham's continued employment with Acadia Healthcare.

In order to recover under La.R.S. 23:632, Dr. Wortham has the burden of proving that "(1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Becht v. Morgan Bldg. & Spas, Inc.*, 02-2047, p. 4 (La. 4/23/03), 843 So.2d 1109, 1112. In order to show that wages were due, Dr. Wortham must prove the terms of the contract. This is a factual determination subject to the manifest error standard of review. *Id.*

Acadia Healthcare argues that when the Employment Agreement expired, Dr. Wortham became an at-will employee only entitled to the base salary of $180,000.00. Its chief executive officer, Joe Rodriguez, testified that those sections of the Employment Agreement regarding base salary, assignment of billing, and Dr. Wortham's duties did not change when the contract terminated. Only Dr. Wortham's entitlement to an annual bonus, which amounted to a commission for the services he billed, changed when the contract expired. Mr. Rodriguez admitted that he and Dr. Wortham never had any discussion about the terms of his continued employment when the Employment Agreement expired. Dr. Wortham testified that he understood the terms of the Employment Agreement to continue because there was never any discussion about changing those terms.

One colloquy during Mr. Rodriguez's testimony gives credit to Dr. Wortham's argument. Mr. Rodriguez explained that after the first year, Dr. Wortham was assigned more consultations at a higher rate. When asked if the

payments for those consultations were deducted as expenses when calculating Dr. Wortham's annual bonus, Mr. Rodriguez originally said they did not, but then deferred to the hospital's chief financial officer, Larry Maxwell. Mr. Maxwell confirmed that those amounts were charged as expenses when calculating the bonus. But there was no need to calculate a bonus if Dr. Wortham was not entitled to the bonus. This is consistent with Acadia Healthcare's position throughout the litigation that only those terms of the contract which benefitted it continued in force, while any terms that inured to the benefit of Dr. Wortham expired on January 14, 2012. We find the trial court did not err in finding that all the terms of the Employment Agreement continued after January 14, 2012.

*The Annual Bonus*

Since we find that the trial court correctly found the terms of the Employment Agreement remained in effect, we must now consider whether the other arguments advanced by the hospital for failing to pay Dr. Wortham have any merit. The provision regarding the annual bonus stated:

> In addition, Practitioner will be eligible for 50% of collections over costs as outlined in the attached exhibit. (In order to assist Practitioner in maximizing collections, a biller will be assigned to assist with all claims issues.)

The attached exhibit was a worksheet which calculated the bonus using hypothetical figures. Dr. Wortham does not dispute that in the first year he worked at Acadia Healthcare, his costs exceeded his collections, and he was not entitled to a bonus. Acadia Healthcare argues that the calculation of expenses is cumulative, not annual, and because the costs so far exceeded the collections for the first year, Dr. Wortham is not entitled to a bonus in the second year or the partial third year. To that end, Mr. Rodriguez testified that the annual bonus has always been

4

cumulative, based on a "running tally." Conversely, Dr. Wortham argues that the collections and costs used to calculate of the bonus are reset each year. He points to the worksheet attached as an exhibit to the Employment Agreement. The annual costs on this sheet include salary of $180,000.00, benefits, taxes, a collection and processing fee, and a liability insurance fee. There is no line item for carried-over expenses from the previous year. The trial court made a factual determination that the calculation of costs was not cumulative year over year. There is sufficient evidence to support his finding that Dr. Wortham was entitled to a bonus for 2012 and 2013, and we will not disturb it.

Finally, Acadia Healthcare argues in its reply brief that the annual bonus is not considered wages because it is payable at the end of the year, and therefore Dr. Wortham cannot collect the bonus pursuant to La.R.S. 23:631 and 632, which state, in pertinent part:

> § 631. Discharge or resignation of employees; payment within three days after termination of employment
>
> A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
>
> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.
>
> (2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other

5

employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.

. . . .

B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.

§ 632. Liability of employer for failure to pay; attorney fees

Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

In support of this argument, Acadia Healthcare cites *Dore v. WHC Lease Service, Inc.*, 528 So.2d 235 (La.App. 3 Cir. 1988). In *Dore*, the court determined that the bonus the plaintiff claimed could only be determined by reviewing audited financial statements, therefore they could not be calculated before the end of the fiscal year. In this case, the provisions of the Employment Agreement, which we have determined apply in this case, specifically state that the "compensation and vested rights to fringe benefits" should be prorated. Similarly, in *Ward v. Tenneco Oil Co.*, 564 So.2d 814 (La.App. 3 Cir. 1990), we held that La.R.S. 23:631 does not apply to a value incentive plan that required an employee to remain with the

company until the sale of the company. In this case, we agree with the trial court's finding that the bonus payments were analogous to commissions that were calculable at the date of the termination, and thus payable as wages. *See Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165 (La.App. 3 Cir. 1992).

*Reimbursement for Licenses and Continuing Education*

At oral argument before this panel, counsel for Acadia Healthcare indicated that the expenses for licenses and continuing education had been paid, and was no longer an issue to be resolved by this court. We deem this issue abandoned, and affirm the award of $7,021.76 in expense reimbursements.

*Penalties and Attorney Fees*

The trial court awarded $11,409.50 for attorney fees, but did not award penalty wages. The trial court's findings of fact as to whether an employee is due penalty wages and attorney fees is a finding of fact subject to the manifest error standard of review. *Red Ball Oxygen, Inc. v. Swilley*, 11-787 (La.App. 3 Cir. 12/7/11), 82 So.3d 360. "In order to recover penalty wages and attorney's fees under La.R.S. 23:632, the claimant must show that (1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." *Becht v. Morgan Bldg. & Spas, Inc.*, 02-2047, p. 3 (La.4/23/03), 843 So.2d 1109, 1112, *cert. denied*, 540 U.S. 878, 124 S.Ct. 289, 157 L.Ed.2d 142 (2003).

Dr. Wortham argues that the trial court should have awarded penalty wages as well as attorney fees pursuant to La.R.S. 23:632. Acadia Healthcare claims that since the amounts claimed by Dr. Wortham are not due under the contract, attorney fees should not have been awarded. As we have rejected Acadia Healthcare's arguments on the validity of the contract, we reject their argument that attorney

7

fees are not due. We find the trial court did not commit manifest error in its finding that the Dr. Wortham was entitled to attorney fees.

The jurisprudence has developed a rule whereby an award for penalty wages pursuant to La.R.S. 23:632 will not be awarded if the employer proves an equitable defense. *Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc.*, 97-1784 (La. 3/4/98), 707 So.2d 1233. Furthermore, this court stated in *Newsom v. Global Data Systems, Inc.*, 12-412, p. 6 (La.App. 3 Cir. 12/12/12), 107 So.3d 781, 787, *writ denied*, 13-429 (La. 4/5/13), 110 So.3d 595:

> This statute is penal in nature and, therefore, must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La.1/14/03), 836 So.2d 14. Equitable defenses are available, and penalty wages are not to be absolutely imposed. *Pace v. Parker Drilling Co. and Subsidiaries*, 382 So.2d 988 (La.App. 1 Cir.), *writ denied*, 383 So.2d 1016 (La.1980). Generally, when there is a good faith question of whether the employer actually owes past due wages, resistance to payment will not trigger penalty wages. However, when the employer is arbitrary, sets out procedural pitfalls for the employee, or is negligent in failing to pay past due wages, penalty wages will be assessed. *Id.*

We find the trial court committed manifest error in finding that penalty wages were not due. Acadia Healthcare refused to respond to repeated request by Dr. Wortham and his counsel to provide information about the payments he claimed. It provided no defense or an attempt at a good faith argument until Dr. Wortham filed suit. Considering the evidence, we find that the defenses it has offered up for the refusal to pay the bonus payments have not been made in good faith. We award penalty wages in the amount of $61,363.67 ($180,000.00 divided by twelve months divided by twenty-two working days in a month times ninety).

Finally, we award attorney fees to Dr. Wortham for the work done on this appeal. We award $7,500.00 in attorney fees.

## CONCLUSION

The judgment of the trial court awarding Dr. Wortham $21,724.93 for annual bonus payments is affirmed. The award for reimbursement of expenses is affirmed. The judgment of the trial court awarding attorney fees of $11,409.50 and litigation expenses in the amount of $804.25 is affirmed. The trial court's judgment denying Dr. Wortham's claim for penalty wages is reversed, and we award penalty wages in the amount of $61,363.67. Finally, we award Dr. Wortham $7,500.00 for attorney fees in pursuit of this appeal. Costs of this appeal are assessed to Acadia Healthcare, LLC.

**AFFIRMED IN PART, REVERSED INPART, AND RENDERED.**

ROGER WORTHAM, M.D.

VERSUS

ACADIA HEALTHCARE, LLC, ET AL.

**COOKS, J., concurring.**

Additionally, I note Acadia Healthcare continued to do nothing until the morning of trial when it handed over, for the first time, the record sought by Dr. Wortham.  Throughout trial, and now on appeal, it has vigorously fought to avoid the clear wording of the contract at issue and the application of the jurisprudence sealing its fate here today.

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ROGER WORTHAM, M.D.

V.

ACADIA HEALTHCARE, LLC, ET AL.

**CONERY, J., concurs in part and dissents in part**

The majority's opinion adequately sets forth the procedural history, facts, and law applicable to this case. The manifest error rule applies and there is a reasonable factual basis in the record to affirm the trial court's award of annual bonus payments as back wages, that portion of the expenses of CME and licenses renewed in 2011, attorney fees, litigation expenses, and costs. I concur with that portion of the majority's opinion.

I disagree with the majority's decision to reverse the trial court and award penalty wages pursuant to La. R.S. 23:632. The trial judge made specific factual findings as to the reason he denied penalties.

> However, because there are some litigation questions, some interpretation questions in figuring what was owed, and who owes what, whether - - it's a continuing - - the defendants had a basis to question, to raise questions, and it's legitimate questions, about what number should be used, should be used, should the number result, for instance, on the CME, of no reimbursement, or is it a twenty thousand dollar ($20,000) figure, as I found, or is it some other number? So there are legitimate issues that needed to be litigated[.]

I believe that there is a reasonable basis in the record to support the trial court's ruling under the manifest error standard, and I would affirm his ruling to deny penalties.